138 N.J. Super. 302 (1975)
350 A.2d 534
ERNEST CORLETO, ADELINE CORLETO AND ERNEST CORLETO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF JOYCE CORLETO, DECEASED, PLAINTIFFS,
v.
SHORE MEMORIAL HOSPITAL, A NONPROFIT CORPORATION OF THE STATE OF NEW JERSEY, WILLIAM JENKINS, ADMINISTRATOR OF THE SHORE MEMORIAL HOSPITAL, JOSEPH D'ORIO, JACKSON NEALL, W.R. MILLER, FRED RARING, ARTHUR T. FORD, III, D. ALLEN STRETCH, JR., LEMUEL HIRES, THOMAS DOUGHERTY, MRS. THOMAS DOUGHERTY, PAXSON KEATES, GEORGE F. ROBERTS, GEORGE MEATHER, MORTON SHIEKMAN, CONSTITUTING THE BOARD OF DIRECTORS OF THE SHORE MEMORIAL HOSPITAL, THE MEDICAL STAFF OF THE SHORE MEMORIAL HOSPITAL, A GROUP OF 141 DOCTORS, AND DR. JOSIAH CALVIN Mc CRACKEN, JR., JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 9, 1975.
*304 Mr. Marvin D. Perskie for plaintiffs (Messrs. Perskie and Callinan, P.A., attorneys, Mr. Willis F. Flower on the brief).
Mr. Leonard C. Horn for defendants Shore Memorial Hospital, and the administrator, board of directors and medical staff thereof (Messrs. Horn, Weinstein & Kaplan, P.A., attorneys).
Mr. John R. Heher for amicus curiae New Jersey Hospital Association (Messrs. Smith, Stratton, Wise & Heher, attorneys, Messrs. Heher and Todd D. Johnston on the brief).
*305 MANUEL H. GREENBERG, J.C.C., Temporarily Assigned.
Plaintiffs' amended complaint sets forth that their decedent was subjected to malpractice on the part of defendant Dr. Josiah Calvin McCracken, Jr., while a patient in defendant hospital, leading to her death. In addition to setting forth a claim against the doctor, claim is also made against the hospital as well as the administrator, board of directors and the medical staff thereof on the ground that they knew or should have known that Dr. McCracken was not competent to perform the surgical procedure on the decedent which he did, but they nevertheless permitted him to do so and allowed him to remain on the case when the situation was obviously beyond his control.
Defendants hospital, administrator, board of directors and medical staff have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. R. 4:6-2. On motion New Jersey Hospital Association was permitted to appear as amicus curiae upon its assertion of the important public interest of the case as well as the difficult and novel legal issues which it states must be resolved.
The amended complaint alleges in substance, among other things, that the board of directors and administrator had a duty to provide and maintain competent medical personnel for patients at the hospital and to admit and allow only those physicians duly qualified and competent to exercise and have privileges at the hospital; that the medical staff had the duty to investigate and then recommend that only licensed, capable and qualified physicians exercise the various privileges at the hospital; that those defendants knew or should have known by the exercise of reasonable care and diligence that Dr. McCracken was not competent to perform the abdominal surgery that he performed on plaintiffs' decedent; that they nevertheless permitted and allowed him to carry out the surgery and, moreover, allowed him to remain on the case when it was obvious that the situation had gone completely beyond his control and competence, and *306 that the negligence of said defendants directly contributed to the plaintiffs' damages.
There appear to be no reported cases in this State dealing squarely with the issue presented. Under such circumstances we must look to general principles of law as well as decisions of other jurisdictions for guidance. Bush v. Bush, 95 N.J. Super. 368, 373 (Law Div. 1967). At the outset, it must be clearly noted that the liability which is sought to be imposed is not a vicarious one with respect to the alleged negligence of Dr. McCracken. There is no allegation in the amended complaint that he was an employee of any of the other defendants. Generally a hospital is not liable for the negligence of a doctor who is not a hospital employee. Thus, at 41 C.J.S., Hospitals, § 8 at 346, it is stated:
Liability of a private hospital for the negligent acts of the members of its professional staff must be predicated on the doctrine of respondeat superior. Accordingly a private hospital is not responsible for any default on the part of a physician or surgeon who practices his profession as an independent agent, and, where a patient employs a physician or surgeon not in the employ of the hospital, the hospital is not liable for his negligence.
Here, however, the moving defendants are charged with wrongdoing separate and distinct from that of Dr. McCracken, albeit that plaintiffs would obviously have to establish wrongdoing on the part of that doctor in order to prevail against the other defendants.
This is a motion directed to the allegations of the amended complaint. The allegations are of various duties on the part of the defendants which were allegedly negligently violated, resulting in damages. "Actionable negligence involves breach of duty and resulting damage." Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 315 (1954). The theory of the cause of action pleaded in the amended complaint is that the moving defendants by their tortious actions (or inactions) created a situation the natural and probable consequences of which were harm of the type which *307 resulted. In Menth v. Breeze Corporation, Inc., 4 N.J. 428 (1950), the Supreme Court stated:
There may be any number of causes and effects intervening between the first wrongful act and the final injurious occurrence and if they are such as might, with reasonable diligence, have been foreseen, the last result as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. A tort-feasor is not relieved from liability for his negligence by the intervention of the acts of third persons, * * * if those acts were reasonably foreseeable. The theory being that the original negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated so that the negligence can be regarded as a concurrent cause of the injury inflicted. One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof although the act of a third person may have contributed to the final result. The law of negligence recognizes that there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury. [at 441-444]
It needs no citation of authority to state that, in general, where one is charged with liability for the negligence of another it is a good defense that the person doing the ultimate harm was an independent contractor rather than an employee of the one sought to be charged. However, certain exceptions have come to be accepted, one of which is that if a person engages an incompetent contractor he may be held liable for the ultimate damage caused by such contractor. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 431 (1959). In such case the theory of liability is clear. Liability does not attach vicariously but because of the wrongful act in placing an incompetent in a position to do harm. This, in essence, is what plaintiffs now contend. Thus, the principle of law involved herein is not at all novel, although its application to the present alleged factual situation in this State may well be.
Turning to other jurisdictions which have considered the same or similar questions as those involved herein, the case of Hull v. North Valley Hospital, 159 Mont. 375, 498 P.2d *308 136 (Sup. Ct. 1972), is on point. Plaintiff was treated by his family physician at defendant hospital. His condition worsened and suit was instituted against the hospital for its negligence in permitting the doctor to practice within it. The court expressed the central issue thus (at 143): "Is the Hospital negligent under the ordinary rules of negligence for not limiting or expelling the doctor before the fact of the case of malpractice, and excluding any reference to the malpractice itself except in damages?" Thereafter the court answered its question as follows:
At the risk of belabored definition, the integration of a modern hospital becomes readily apparent as the various boards, reviewing committees, and designation of privileges are found to rest on a structure designed to control, supervise, and review the work within the hospital. The standards of hospital accreditation, the state licensing regulations, and the respondent's bylaws demonstrate that the medical profession and other responsible authorities regard it as both desirable and feasible that a hospital assume certain responsibilities for the care of the patient. [at 143]
After rejecting plaintiff's claim of vicarious liability, the court stated (at page 143) that: "Assuming that the Board of Directors of the hospital entity has a duty to `act' when put on notice or advised by the medical section that a doctor is incompetent to continue to practice medicine," the law requires that this determination be made through the use of expert testimony. The court reviewed the proofs and found them deficient. However, it seems clear that the Montana court was quite willing to find an independent duty of care running from the hospital to the patient.
The case of Darling v. Charleston Community Memorial Hosp., 33 Ill. 326, 211 N.E.2d 253 (Sup. Ct. 1965), is also instructive in spite of the fact that the treating physician evidently was an employee of the hospital, since the case was clearly not decided on a respondeat superior basis. In fact, the court did not dwell at all on the employee-contractor distinction. It did conclude, however, that it was "both *309 desirable and feasible that a hospital assume certain responsibilities for the care of the patient." 211 N.E.2d at 257.
The case of Fiorentino v. Wenger, 19 N.Y.2d 407, 280 N.Y.S.2d 373, 227 N.E.2d 296 (Ct. App. 1967), contains language bearing upon the point in question. The case involved the death of a patient following a relatively novel type operation. The surgeon was selected by the patient's family and was not a hospital employee. The court stated that:
It should be evident that a hospital generally cannot be held liable, other than derivatively, for another's malpractice. Thus, where, as here, there is no vicarious liability, the plaintiff must establish that the hospital, through its own agents, was guilty of malpractice or other tort concurring in causing the harm. Where a hospital's alleged misconduct involves an omission to act, the hospital will not be held responsible unless it had reason to know that it should have acted within the duty it concededly had. * * * More particularly, in the context of the present case, a hospital will not be held liable for an act of malpractice performed by an independently retained healer, unless it had reason to know that the act of malpractice would take place. * * * [280 N.Y.S.2d at 378, 227 N. Ed.2d at 299]
The court went on to conclude that unless it could be said that the performance of the type of operation in question were per se an act of malpractice, the hospital could not be held liable. However, if we apply the reasoning of Fiorentino to the case at bar it seems clear, assuming that the allegations of the amended complaint are substantiated, that the permitting of an operation by one known to be incompetent to perform it, as well as the failure to remove him from the case when problems have become obvious, would be a basis upon which to impose liability on those responsible.
It is the position of amicus curiae in its brief that the issue of Dr. McCracken's general competence to practice medicine and surgery is not appropriate for determination by a judge or jury and that this determination is within the exclusive province of the hospital and its related personnel. *310 In other words, the contention is that matters such as the competence of a physician are purely internal affairs of the hospital and any such determinations are binding on all who might be affected thereby, or at least not susceptible of being challenged in a court of law. Reference is made to the by-laws, rules and regulations of the medical staff of Shore Memorial Hospital, amended June 1974; to the Guidelines for the Formulation of Medical Staff By-laws, Rules and Regulations, 1971, published by the Joint Commission on Accreditation of Hospitals, and to the Standards for Hospital Accreditation, published by the Joint Commission on Accreditation of Hospitals, all of which purportedly deal with the matter on an "intra-professional" basis. The cases cited in support of this position are cases in which the dispute generally was between the doctor and the hospital seeking to exclude him. It is one thing to say that a hospital should have the right to determine the fitness or qualifications of a physician to perform certain procedures within the hospital when the physician applies therefor; it is quite another matter to say that if the hospital makes such a determination in favor of the physician then all third parties are barred from basing a cause of action upon such determination, even though it may have been improper or, indeed, from ascertaining whether any inquiry was even made as to his qualifications. What is really asked for is an immunity from suit based upon considerations of public policy. Arguments are made to the effect that permitting this lawsuit to proceed will have a widespread impact on New Jersey hospitals and doctors; it will affect the composition of medical staffs and hospital boards; it will lead to an increase in insurance premiums, and it will perhaps have a detrimental impact on health care delivered to residents of the State.
An injured party has a common law right, where the injury is compensable, to maintain an action for damages; an immunity from suit is in derogation of this right and will be strictly construed. Bush v. Bush, supra, at 375. *311 Certainly an immunity would not be lightly granted. The argument is made that the public good can best be served by not subjecting every hospital administrator, director or trustee and medical staff member in the State to the constant threat of a lawsuit whenever it is alleged that negligence occurred in a hospital. The apparent premise that this will occur may be somewhat dubious. It rests upon speculation and one could just as well speculate that considering that normally an individual defendant physician would be able to respond for any damages caused by his malpractice there would be a reluctance on the part of plaintiffs to engage in litigation with what might well be unnecessary parties, involving considerably more time and expense. Also, unless a plaintiff is able to marshal facts to support his contentions his claim will be subject to being dismissed on a motion for summary judgment, thereby eliminating the necessity of a trial. The public policy arguments advanced for granting the moving defendants an immunity can be countered by other arguments. Thus, it can be argued that subjecting persons in the class to liability will serve to make them more aware of their responsibilities in assuring that only competent physicians practice within their hospitals, thereby raising the level of medical care within the State.
The fact is that whether such an immunity is in the public interest or against the public interest is a matter not susceptible of determination by this court. If such a determination were made it would be more appropriately done by the Legislature following any indicated hearings. For this court to grant an immunity would quite plainly be judicial legislation without benefit of any facts upon which to base it.
The medical staff of the Shore Memorial Hospital, a group of 141 doctors, named as a defendant, urges that it is not amenable to suit as an unincorporated association under N.J.S.A. 2A:64-1 et seq. This argument is without merit. Plaintiffs could have named all 141 doctors individually *312 as defendants, but to do so would serve no useful purpose. The law permitting suits against unincorporated associations is remedial legislation and is to be given as liberal an interpretation as possible, consistent with its language. Donnelly v. United Fruit Co., 40 N.J. 61 (1963). There is precedent for designating the medical staff of a hospital as a party in a civil action. Joseph v. Passaic Hospital Assn., 26 N.J. 557 (1958); Griesman v. Newcomb Hospital, 40 N.J. 389 (1963).
For the reasons stated above the motion will be denied.