Bessie SNELLING, Plaintiff-Appellant,

v.

Roberta MIDDLETON, et al.,
Defendants-Respondents.

No. 49820.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 25, 1986.

Rehearing Denied March 25, 1986.

Godfrey P. Padberg, Matthew J. Padberg, Padberg, McSweeney, Slater & Merz, St. Louis, for plaintiff-appellant.

Jeffrey S. Maguire, Thomasson, Dickerson, Gilbert & Cook, Cape Girardeau, for defendants Lopez, Grable, Pattaropong, Puangsuvan & Saengsamran.

F. Douglas O'Leary, Martin L. Perron, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for defendants-respondents Bernard and Gubin.

Joseph M. Kortenhof, Edward V. Crites, Kortenhof & Ely, St. Louis, for defendants-respondents Painter, Painter, and Luangjamekorn.

CARL R. GAERTNER, Presiding Judge.

Plaintiff Bessie Snelling initiated this action seeking damages for the alleged wrongful death of her husband Walter Snelling. Walter Snelling was an 81-year-old inpatient at Pemiscot County Memorial Hospital. He died from injuries he suffered in a fire that started while he was smoking in his hospital bed. Plaintiff named her husband's treating physicians, his attending nurses, the manufacturer of his hospital gown, and 10 members of the hospital's medical staff (staff physicians), as defendants. The trial court granted the staff physicians' motions for summary judgment. Plaintiff thereafter dismissed as to the attending nurses and settled with the treating physicians and the manufacturer. The judgment entered for defendant staff physicians is therefore final and appealable.

Defendant staff physicians had no direct relationship with Walter Snelling. None of them had undertaken to examine, care for, or treat him, and it is likely that most of them did not even know he was a patient in the hospital. Nevertheless, plaintiff seeks recovery against them, predicating liability on breach of an alleged duty to supervise, monitor, and oversee the care provided to all hospital patients. Plaintiff claims this duty is imposed upon each member of a hospital's medical staff by standards of the Joint Commission on Accreditation of Hospitals (JCAH), which Pemiscot County Memorial Hospital had voluntarily adopted. Plaintiff's petition set forth a number of the JCAH standards relating to smoking in the hospital, to fire prevention, to supervision of patients by the nursing staff, and to review and evaluation of medical staff

practice.[1] The petition alleges the staff physicians' negligent failure to meet the responsibility imposed upon them by the JCAH standards caused her husband's death.

The issue thus presented is whether a physician, when he or she joins a hospital's medical staff, undertakes a duty to supervise, monitor, and oversee the care provided to the hospital's patients, and if so, whether he or she owes that duty to each and every patient in the hospital.

The existence of a duty owed by the defendant to the plaintiff is the cornerstone of any negligence action. Defendant is said to owe plaintiff a "duty" when defendant and plaintiff stand in such a relationship to each other that the law will impose upon defendant an obligation to conform his conduct to a standard of reasonable care for plaintiff's benefit.[2] Missouri courts have long recognized and applied this principle. As the Supreme Court observed in *Vanacek v. St. Louis Public Service Co.*, 358 S.W.2d 808 (Mo.banc 1962):

> "A fundamental test of whether one person has a cause of action in tort against another is: Did the person, sought to be held liable, owe to the person, seeking to recover, any duty, to do something he did not do, or not to do something he did do? If so, his failure to do what he ought to have done or his doing what he ought not to have done constitutes a legal wrong, whether it be intentional or merely negligent, for which the person injured thereby can recover, except where his own fault is a contributing cause." (citation) ... Actionable negligence is negligence to the particular person injured. The basis of an action for negligence must be a violation of plaintiff's own right. (citation) ... The obligation must be due from the defendant to the person in-

jured.... (citation). It is not enough to show that the obligation was to another person or class, and that if performed as to them, plaintiff would not have been injured. "The wrongfulness of an act is found in its probable effect upon persons who are in some relation to the actor." *Id.* at 810–11.

The rule is somewhat more succinctly stated in *Hyde v. City of Columbia*, 637 S.W.2d 251, 257 (Mo.App.1982): "[E]ssential to liability for negligence is a relationship the law recognizes as the basis of a duty of care between the inflictor of injury and the person injured."

Plaintiff concedes defendants' only connection with her husband is that defendants were members of the hospital's medical staff when her husband met his death. She argues, however, that this connection is substantial enough to support the conclusion that defendants owed a duty of due care to her husband. Plaintiff offers as the basis for her position certain of the JCAH standards, as well as provisions of the state statutes relating to county hospitals, and the statutes' implementing regulations. She argues these standards, statutes, and regulations impose upon members of a county hospital's medical staff the duty to enforce the JCAH standards adopted by the hospital's board of trustees, including the standards relating to smoking in bed. She claims this duty is owed to each and every patient in the hospital and is breached by each staff physician who fails to ensure the standards are enforced.

We have reviewed the applicable JCAH standards, the relevant statutes, and their implementing regulations, but find nothing there to support the conclusion that defendant staff physicians owed a duty to plaintiff's husband.

---

**1.** The JCAH publishes extensive standards in an annual accreditation manual for hospitals, among which are standards for the hospital governing body and the hospital medical staff.

**2.** "The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to

the person who seeks to make him liable for his negligence.... A man is entitled to be as negligent as he pleases to the whole world if he owes no duty to them." Lord Esher in *LeLievre v. Gould*, 1 Q.B. 491, 497 (1893), cited in Prosser and Keeton, The Law of Torts, § 53, p. 357, n. 9 (5th ed. 1984).

Sections 205.160 to 205.379, RSMo.1978, govern the organization and operation of county hospitals. The board of trustees is designated the hospital's "supreme governing authority" and a physician must accept the board as such if he or she wishes to practice in the hospital. § 205.195.1. Section 205.190.3 directs the board to adopt "bylaws, rules and regulations for its own guidance and for the government of the hospital...." Section 205.195.2 grants the medical staff the power to initiate bylaws, rules, regulations, and policies, but provides these may be adopted only with the board of trustee's approval. The medical staff thus has no duty under the statute to enforce the bylaws, rules, regulations and policies it initiates. Enforcement remains the exclusive obligation of the board.

Similarly, nothing in the statute supports plaintiff's assertion that the medical staff has a duty to supervise, monitor and oversee the care provided to all hospital patients. Section 205.300.2 provides that the physician a patient employs "shall have *exclusive* charge of the care and treatment of such patient, and nurses ... shall as to such patient be subject to the directions of such physician; subject always to such general rules as shall be established by the *board*...." By granting the treating physician exclusive charge of his or her own patients and by providing that the exercise of that charge is subject only to the general rules established by the board of trustees, § 205.300.2 precludes the inference that medical staff members are obliged to supervise, monitor and oversee the care and treatment of patients other than their own.

The Code of State Regulations does not purport to alter this organizational scheme. 13 C.S.R. 50–20.021 regulates the organization and management of hospitals. The

provisions of this section provide that the function of the medical staff is to advise the board of trustees. The medical staff is required to "review and evaluate the quality of clinical practice" but responsibility for carrying out and enforcing various policies adopted by the board is explicitly placed upon the board's chief executive officer.

The JCAH standards regarding organization and management of hospitals contain language similar to that of the Code of State Regulations. The standards are somewhat more detailed and impose certain obligations upon the medical staff including the obligation to participate in a multidisciplinary hospital safety committee. Under the JCAH standards the hospital's board of trustees remains the hospital's policymaker and retains the responsibility and the authority to enforce the policy it makes. On the other hand, the medical staff's responsibility under the JCAH's standards is to the board, and to the board alone.[3] *See Pedroza v. Bryant,* 101 Wash.2d 226, 677 P.2d 166, 171 (banc 1984), *quoting* Koehn; *Hospital Corporate Liability: An Effective Solution to Controlling Private Physician Incompetence?* 32 Rutger L.Rev. 369–70 (1979).

After reviewing the applicable statutes, regulations and standards, we are unable to discern the existence of any duty owed to a hospital patient by a non-treating physician merely because of his membership upon the hospital's medical staff. The only case cited by plaintiff that relates to the issue of medical staff liability is *Corleto v. Shore Memorial Hospital,* 138 N.J.Super. 302, 350 A.2d 534 (1975). A thorough discussion of *Corleto* may be found in Horty and Mulholland, *The Legal Status of the Hospital Medical Staff,* 22 St. Louis U.L.J. 485 (1978). The authors of the article emphasize that *Corleto* is a trial court deci-

---

**3.** Before the trial court was the deposition testimony of plaintiff's expert witness, an experienced hospital administrator. He described the "chain of command" whereby hospital personnel who became aware of deviations from policies adopted by the board could report to their respective department heads or supervisors, who, in turn, would bring the matter to the attention of the hospital administrator, "who has an opportunity to go to the chief of staff, and things can happen." He further testified that a non-treating physician could have no occasion to get involved with the patient of another member of the medical staff unless asked to do so by the treating physician.

sion upon a motion to dismiss, that the case was settled before trial, and that no authoritative appellate court opinion was ever issued. In *Corleto,* the trial judge held that the medical staff of the hospital, consisting of 141 doctors, was amenable to suit as an unincorporated organization pursuant to a New Jersey statute. N.J.Stat.Ann. § 2A:64–1 (West 1952). The issue of the liability of the staff to a hospital patient for an alleged failure to advise the board of directors that a particular physician was incompetent was not addressed. We have been cited to and our independent research has disclosed no decision which imposes liability upon physicians merely because of their membership on a hospital medical staff for the negligent injury of a patient of another physician. A contrary observation is made in *Harrison v. City of Pontiac, Mich.,* 285 F.2d 305, 306 (6th Cir.1961). "No responsibility for the operation of the hospital, or for the care and treatment of patients, is placed upon the medical staff as a unit." *See also Campbell v. Thornton,* 368 Mass. 528, 333 N.E.2d 442, 444–445 (1975).

In negligence jurisprudence the concept of duty "is ... an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection" from injury at the hands of the defendant. Prosser and Keeton, the Law of Torts, § 53, p. 358 (5th ed. 1984). Among these considerations of policy are the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the consequences to the community of imposing a duty to exercise care with resulting liability for breach, the availability, cost and prevalence of insurance coverage for the risk involved. *Id.* at 359, n. 24. Such factors weigh heavily against the extension of liability for the injuries suffered by patients of other physicians to all members of the hospital's medical staff. This conclusion is particularly compelling when the attempt to impose liability upon the staff physicians is predicated upon an alleged violation of basic safety or housekeeping standards rather than standards involving professional expertise.

The judgment of the trial court is affirmed.

SMITH and SNYDER, JJ., concur.