William H. DINE, et al., Appellants,

v.

Keith M. WILLIAMS, et al., Respondents.

No. WD 44156.

Missouri Court of Appeals, Western District.

March 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1992.

Application to Transfer Denied June 30, 1992.

John H. Lake, Thomas H. Rost, Jefferson City, for appellants.

Hamp Ford, Columbia, for respondents.

Before SHANGLER, P.J., and BERREY and HANNA, JJ.

HANNA, Judge.

This is a medical malpractice action brought by the surviving husband and children of Elizabeth Dine who died on November 15, 1987 at the University of Missouri Hospital in Columbia, Missouri, two days after giving birth to her fifth child. Mrs. Dine was admitted to the hospital on the evening of November 12th.

The defendants at the time the lawsuit was filed were Drs. Keith M. Williams, Carl C. Pearman, Marianne Morris, William T. Griffin, Mary Beth Benton, David Bradford, J. Dewey Cooper, David Boesch and University of Missouri–Columbia Hospital.

Shortly after plaintiffs' lawsuit was instituted, the court dismissed the University of Missouri–Columbia Hospital by reason of its sovereign immunity. Immediately before trial, plaintiffs filed a voluntary dismissal as to medical students Cooper and Boesch. The defendants remaining at trial included resident physicians Williams, Morris, Benton and Bradford, and attending physicians Pearman and Griffin. The plaintiffs allege negligence against the defendants in the care and treatment rendered to Elizabeth Dine. The resident doctors had experience ranging from one to four years in obstetrics and gynecology training. Doctors Griffin and Pearman were board certified in obstetrics and gynecology and members of the hospital medical staff and faculty at the University of Missouri Medical School.

Mrs. Dine was admitted to the hospital at approximately 8:00 p.m. on November 12th. Defendant Pearman was the designated attending physician on that date and remained the attending physician until 5:00 p.m. the next day. Pearman acknowledged he was "on call" during that time period and that he did not see Mrs. Dine. Dr. Griffin was the other attending physician and his designation as such commenced at 5:00 p.m. on November 13 and continued through the next two days. Griffin was at the hospital at 7:00 p.m. on the 13th and first consulted with chief resident Williams at 8:00 p.m. They decided to deliver the child by cesarean section and the procedure was completed later that night.

Mrs. Dine made slow progress toward delivery with an abnormally slow rate of cervical dilation and little, or no contractions. Her temperature was elevated and a large mass developed in her abdomen. Following a cesarean section delivery, where the uterus was removed because it was gangrenous, Mrs. Dine was taken to intensive care where she died secondary to cardiac failure a little over twelve hours following delivery.

Plaintiffs' expert testified the deceased's course of care, both before and during her hospitalization, was below the standard of care and was the cause of her death. He testified she developed an infection from repeated examinations and the placement of a non-functioning catheter through her infected vagina providing an avenue for organisms to ascend into the uterine cavity. It was his testimony that proper care required the cesarean section be performed two hours earlier and the intravenous administration of prophylactic antibiotics post-operatively.

The defendants' experts identified the disease process as a bacteria which rarely causes infection in human beings and a toxin that is lethal with no known antitoxin to combat the infection process. They testified the care and treatment Mrs. Dine received was in accordance with medical standards.

The court sustained defendant Pearman's motion for a directed verdict at the close of all of the evidence. The jury returned a verdict in favor of the remaining defendants and the plaintiffs' motion for new trial was overruled.

## POINT I

For their first point appellants/plaintiffs claim the trial court erred in refusing to strike for cause a venireperson who had expressed an opinion during plaintiffs' voir dire examination concerning her ability to be fair because of her employment in an operating room of a hospital. Questioning by defendants' counsel was directed at rehabilitating the venireperson. The trial court ruled she was rehabilitated and denied plaintiffs' challenge for cause. The

plaintiffs used a peremptory strike to exclude her. Plaintiffs do not take issue with the court's ruling that the venireperson was rehabilitated.

Since the opinion was expressed before the jury was sworn, plaintiffs contend that the issue is governed by § 494.470.1, RSMo 1989. It is plaintiffs' position the amendments to § 494.470 in 1989, adding subsections 2, 3, 4 and 5, provided a statutory scheme which denied the trial court discretion to determine whether a venireperson should be discharged for cause under subsection 1 of the statute. The plaintiffs argue that since the 1989 amendments grant a trial court discretion to determine such matters *after a jury is sworn* and since subsection 1 (the original) does not include an express grant of discretion, the legislature did not intend for the trial court to have the discretion to retain a venireperson who expresses an opinion during the voir dire examination.

The language in subsection 1 of § 494.470 is essentially the same as found in its predecessor statute. *See* § 494.190, RSMo 1986 (repealed). Missouri courts have historically held that rulings on challenges for cause lie generally within the sound discretion of the trial court. *State v. Royal*, 610 S.W.2d 946, 950 (Mo. banc 1981). The trial court is in a far better position to measure and evaluate the venireman's demeanor. *Id.* Cases decided after the 1989 amendments are consistent with this pre–1989 reasoning. *See Missouri Highway and Transp. Comm'n v. Vitt*, 785 S.W.2d 708, 711 (Mo.App.1990). The amendments did not remove the discretion from the trial court. A trial court's ruling on a challenge for cause will remain undisturbed on appeal unless that ruling clearly and manifestly indicates an abuse of discretion. *Id.* The record does not indicate an abuse of discretion. The point is denied.

## POINT II

For their second point plaintiffs allege the trial court erred by excluding certain rules and regulations of the University of Missouri-Columbia Hospital and Clinics and

a letter from the hospital to the Accreditation Board. This proffered evidence was directed to defendants Pearman and Griffin and their duty to supervise the resident physicians.

The excluded rules and regulations set forth in relevant part as follows:

C.  All patients shall be attended by members of the attending medical staff and shall be assigned to an appropriate clinical service.

.  .  .  .  .

E.  The attending physician must directly supervise the activities leading to the diagnosis and treatment of the patient. He will make rounds on his patients and review charts at frequent intervals.

The rules and regulations offered pertain solely to the "attending physicians" and were not offered to establish the negligence of any other defendant, including the hospital which was not a defendant. Therefore, our review is limited to the admissibility of the evidence as it pertains to the claims against the attending physicians. Both doctors acknowledged they had a responsibility to supervise the residents.

Plaintiffs claim the evidence was admissible to establish the "responsibility" of the attending physicians to directly supervise the resident physician's activities in the care and treatment of the deceased and not to establish a standard of care. The defendants argue, notwithstanding plaintiffs' argument, the proffered evidence does suggest a duty of supervision, but it does not establish a medical standard of care. The court excluded the evidence because it concluded the proffered evidence attempted to establish a standard of care by an improper means.

It is plaintiffs' primary focus that the attending physicians' liability is predicated on their failure to properly supervise the resident physicians. In that respect the plaintiffs must establish a standard of care of the attending physicians' duty to supervise the other doctors. The plaintiffs have directed our attention to a number of cases from other jurisdictions where a hospital's rules and regulations have been admitted to prove a hospital's standard of care. We have no particular dispute with these holdings. However, they are not applicable to the fact situation here because they do not concern matters of medical knowledge requiring expert testimony and the cases dealt with the negligence of hospitals.

The duty of supervision is not susceptible to easy determination and the amount of attention varies according to the particular circumstances of the case. *Marks v. St. Francis Hosp. and School of Nursing, Inc.*, 179 Kan. 268, 272, 294 P.2d 258, 261 (1956). The standard of care in supervising a resident physician by an attending physician is a technical subject outside the common knowledge and experience of a jury. In *Fisher v. Wilkinson*, 382 S.W.2d 627, 632 (Mo.1964) the court concluded that the frequency of visits to the patients was a matter calling for the exercise of the judgment of a trained person and beyond the common knowledge experience of a lay person. *Also see Bateman v. Rosenberg*, 525 S.W.2d 753 (Mo.App.1975) where the court required expert testimony (provided by the defendant doctor) as to what constitutes the proper standard of care and adequate supervision of a patient following surgery.

Evidence establishing the standard of care in a medical negligence case must be introduced by expert testimony. *Hart v. Steele*, 416 S.W.2d 927 (Mo.1967) and *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 183 (Mo.App.1982). If plaintiffs are attempting to prove negligent supervision, expert testimony is an indispensable prerequisite to establishing liability. The only standard of care testified to by plaintiffs' expert went to the medical care itself, not to the responsibility of the attending physicians or their duty as attending physicians. We hold that the contention an attending physician is negligent in failing to supervise resident physicians while the attending physician is "on duty" must be established by expert testimony and the amount of attention needed depends on the custom or practice of ordinarily diligent and careful physicians acting under the same or similar circumstances.

*See Williams v. Chamberlain,* 316 S.W.2d 505, 510 (Mo.1958).

■ The rules and regulations of the hospital dealing with the requirements of attending physicians may very well be admissible if and only when the proper standard of care is proven by expert medical testimony. If plaintiffs' expert had testified to the standard of care of an attending physician and that the defendants' conduct fell below that standard, then the rules and regulations may have been admissible to support the negligent conduct. *See,* e.g. *Pierce v. Platte–Clay Elec. Coop., Inc.,* 769 S.W.2d 769, 772 (Mo. banc 1989) and C.J.S. "Evidence" § 570.

Finally, plaintiffs claim the evidence should have been admissible to impeach the testimony of the attending physicians concerning their responsibility at the hospital. The evidence might have been admissible for impeachment purposes if requested, but we need not reach the issue. If the attending physicians testified that their responsibilities were different than the rules and regulations, plaintiffs were required to re-offer the evidence to impeach the testimony. This they did not do and the matter has not been preserved for review. *Enyeart v. Peterson,* 184 Mo.App. 519, 170 S.W. 458, 459 (1914).

■ The other exhibit, the letter written by the hospital to the Accreditation Council for Graduate Medical Education, was not only irrelevant as to the attending physicians for the reasons stated in Point II, but also inadmissible as hearsay and fits within no exception to the rule excluding such evidence. The letter was written by the hospital to the accreditation board. There is no evidence the attending physicians were aware of its existence. It is possible to avoid the hearsay exclusion if the letter is considered an admission of a party-opponent. However, the hospital was not a defendant and attending physicians cannot be bound by an admission of the hospital. *See Menorah Medical Center v. Davis,* 463 S.W.2d 618, 621–22 (Mo.App.1971) and *Louisiana Lumber Co. v. Burbridge,* 220 S.W.2d 760, 764 (Mo.App.1949). The letter was properly rejected. The point is denied.

## POINT III

For Point III plaintiffs allege the trial court erred in sustaining the defendants' objection to certain questions posed to plaintiffs' expert witness. The questions requested the witness to disclose his opinion as to "who was at fault" or "who failed to provide" adequate care to the deceased.

■ The decision to admit or exclude expert testimony is left to the sound discretion of the trial court. *Ryan v. Parker,* 812 S.W.2d 190, 194 (Mo.App.1991). Also, the form of examination is left to the trial court's discretion. *State v. Clark,* 693 S.W.2d 137, 142 (Mo.App.1985). Since each question asked of plaintiffs' expert requested the witness' own opinion, and were not asked according to the conventional and accepted test approved by the authorities (for a rendition of the appropriate form of questions put to medical experts *see Yoos,* 645 S.W.2d at 183 and the cases cited therein), those questions were objectionable. *See Swope v. Printz,* 468 S.W.2d 34, 40–41 (Mo.1971).

■ We are mindful § 490.065 permits an expert to give testimony in opinion form. However, the opinion must be based upon the established standard of care and not upon a personal standard. The question must be phrased as to leave no doubt that the expert is basing the opinion on well recognized standards.

■ The trial court acted within its discretion to sustain the objection to these questions. The point is denied.

## POINT IV

Plaintiffs also allege the trial court erred in sustaining defendant Pearman's motion for directed verdict at the close of all the evidence. Plaintiffs' argument of liability is premised solely on the regulations discussed in Point II and they concede failure to make a submissible case against defendant Pearman absent the hospital rules and regulations. We have concluded that the rules and regulations do not, standing alone, meet the requisite standard neces-

sary to prove their cause of action. *Yoos,* 645 S.W.2d at 183. Under the circumstances, we have ruled the evidence was properly excluded from evidence. As no standard of care was established for Pearman as the attending physician, plaintiff's final point is denied.

The judgment of the trial court is affirmed.

All Concur.