Rosalyn HAMMONDS, Plaintiff–Appellant,

v.

**JEWISH HOSPITAL OF ST. LOUIS, et al., Defendant–Respondent.**

No. 65882.

Missouri Court of Appeals, Eastern District, Division Three.

April 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1995.

Leonard P. Cervantes, St. Louis, for appellant.

Michael E. Hughes, Edward J. Hanlon, St. Louis, for respondent.

DOWD, Judge.

Plaintiff appeals a summary judgment granted in favor of Defendant, Diane Magrane, M.D., in a wrongful death/medical malpractice suit against a hospital and several physicians. We reverse and remand.

Plaintiff went to Jewish Hospital's emergency room with ruptured membranes after her water broke and she began premature labor. Plaintiff was then approximately eight months pregnant. She advised Jewish Hospital she had previously delivered several babies by cesarean section and had been warned by a physician she would have complications with this birth as well.

Jewish Hospital wanted to transfer Plaintiff to City Hospital because she was uninsured. A Jewish Hospital resident, Elihyu Wolfson, M.D., called City Hospital concerning the proposed transfer. Exactly how many people Dr. Wolfson spoke with at City Hospital is disputed; however, it is undisputed he spoke with Joyce Dube, M.D., a City Hospital junior resident. Dr. Dube advised Dr. Wolfson she would have to first check with City Hospital's chief obstetrics "on call" resident, Defendant Magrane, about accepting the proposed transfer and would then call him back.

At the time of Dr. Wolfson's phone call, Dr. Dube was involved with an emergency patient. She called Defendant at home to request that Defendant come in to assist with this patient. Dr. Dube also told Defendant about Plaintiff's medical condition and told her that Jewish Hospital wanted to transfer Plaintiff. Defendant told Dr. Dube that City Hospital was required to accept such uninsured transfer patients. Furthermore, Defendant said she would immediately come to the hospital to assist with the emergency patient. Defendant told Dr. Dube to call Jewish Hospital back and arrange Plaintiff's transfer and to have them give Plaintiff Ritodrine to temporarily prevent active labor during transit between hospitals.

When Defendant arrived at City Hospital, she first assisted with the other patient. Defendant then inquired about Plaintiff. Dr. Dube said she had not yet been able to call Jewish Hospital back due to problems in the unit and a large number of patients.

Jewish Hospital, however, did not wait for Dr. Dube to return its phone call and had already transferred Plaintiff to City Hospital's emergency room. Jewish Hospital advised neither the Emergency Department

nor the Labor and Delivery Unit that it had transferred Plaintiff nor did it provide City Hospital with adequate medical information concerning Plaintiff's condition. Plaintiff was, therefore, processed at City Hospital as if she were merely a routine patient and not a high-risk patient. Jewish Hospital did not give Plaintiff any medication to suspend or inhibit labor during the transfer. While at Jewish Hospital, Plaintiff's fetus was still alive, and according to Plaintiff's expert, the fetus was likely still alive when Plaintiff arrived at City Hospital.

Plaintiff apparently arrived in the City Hospital emergency room at approximately 11:30 p.m. Since she was perceived to be a routine patient, she was placed in a room to await a physician. At approximately 12:30 a.m., a custodian noticed Plaintiff was badly bleeding. Plaintiff was then taken to the Labor and Delivery Unit and examined by Dr. Dube, who found no fetal heart tones, cardiac activity, or movement. Plaintiff had gone into shock. It was around this time that Defendant discovered Plaintiff had already been transferred. She examined Plaintiff, confirming Dr. Dube's assessment that the fetus had died.

Plaintiff filed suit against Jewish Hospital, Dr. Wolfson, Dr. Dube and Defendant. Defendant filed a Motion for Summary Judgment in which she argued she was entitled to judgment as a matter of law because no physician-patient relationship existed between herself and Plaintiff. The trial court granted Defendant's motion, stating Plaintiff could later seek to rejoin Defendant should further discovery provide a justiciable issue. Plaintiff later filed a Motion for Rehearing and Reconsideration in which she claimed new evidence supported a physician-patient relationship. The trial court overruled this motion. Plaintiff later settled with both Jewish Hospital and Dr. Wolfson and voluntarily dismissed Dr. Dube without prejudice. Plaintiff now appeals the trial court's order granting Defendant summary judgment.

■ We review this appeal in accord with the dictates of *ITT Comm. Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371 (Mo. banc 1993). Summary judgments are "extreme and drastic remed(ies)" and "great care" must be used when considering them. *Id.* at 377. Skepticism towards the use of summary judgments has always existed due to a suspicion since one party will be denied his or her day in court, this "borders on denial of due process." *Id.* Accordingly, we review the judgment in the light most favorable to the party against whom it was entered and will give that party the benefit of all reasonable inferences from the record. *Id.* at 376. We will allow a summary judgment to stand only if there are no factual issues which require a trial, thereby providing movant a right to summary judgment as a matter of law. *Id.* Summary judgment is not as feasible in negligence cases as it may be in other types of cases. *Bruner v. City of St. Louis,* 857 S.W.2d 329, 332 (Mo.App.E.D.1993). Contrary to Plaintiff's brief on appeal, the "slightest doubt" standard has been abandoned and is no longer applicable. *ITT Comm. Finance Corp.,* 854 S.W.2d. at 378.

Plaintiff's one point on appeal argues the trial court erred in granting Defendant summary judgment because there was a genuine issue of material fact concerning the existence of a physician-patient relationship at the time of the alleged negligence. In support of this contention, Plaintiff provides five sub-points of argument. We need only address one part of Plaintiff's argument since it establishes disputed facts for which we reverse and remand. This, however, should not be construed as an opinion either for or against the validity of the other sub-points; we merely find it unnecessary to address them.

■ Plaintiff's Petition alleged Defendant and Dr. Dube were negligent in their failure to timely communicate with Jewish Hospital, eventually resulting in the death of Plaintiff's fetus due to their failure to ensure Plaintiff's timely and proper treatment. Additionally, Plaintiff contends Defendant was negligent in supervising Dr. Dube. We find genuine factual disputes exist regarding this assertion. Therefore, the trial court erred in granting summary judgment. Initially, we note the wording of Plaintiff's Petition may not have been as clear and specific as it could have been regarding negligent supervision. How-

ever, we believe the Petition, which clearly pleaded negligence as a cause of action, is adequate when viewed in the proper light. "Summary judgment is appropriate ... only when no theory within the scope of the pleadings, depositions, admissions and affidavits filed would permit recovery ..." *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 244 (Mo. banc 1984). *See also, Golf Digest/Tennis, Inc. v. Diode, Inc.,* 849 S.W.2d 617, 618 (Mo.App. E.D.1993); *Y.G. v. Jewish Hosp. of St. Louis,* 795 S.W.2d 488, 495 (Mo.App.1990).

The Petition alleged Defendant Dube needed to check with Defendant regarding Jewish Hospital's proposed transfer of Plaintiff and that Defendant was the one who told Dr. Dube what medication to prescribe. This allegation, when viewed in the appropriate light, clearly implies Dr. Dube needed Defendant's approval or instruction regarding the transfer. Furthermore, Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment referred to Defendant as the chief resident and more precisely stated Defendant was "negligent as supervisor of Dr. Dube." Plaintiff's Motion for Rehearing stated Dr. Dube telephoned Defendant that evening for advice, and that Defendant was going to the hospital to "take care of" Dr. Dube's problems in the unit.

Depositions of Plaintiff's experts, which were before the trial court, also support a theory of negligent supervision. Plaintiff's experts stated Defendant "was Dr. Dube's supervisor, and ultimately responsible for any actions that Dr. Dube did or didn't do." Plaintiff also presented expert testimony that Defendant's conduct fell below the appropriate standard of care and that there was a "major problem for malpractice" regarding the delay in treatment.

Viewing all that was before the trial court in the appropriate light, we believe it erred in granting summary judgment. When looking at the judgment in the light most favorable to Plaintiff and giving Plaintiff the benefit of all reasonable inferences from the record, we believe the trial court erred in its judgment. *ITT Comm. Finance Corp.,* 854 S.W.2d at 376. The theory of negligent supervision can be discerned when reviewing

the pleadings, depositions and affidavit before the trial court. *Zafft,* 676 S.W.2d at 244.

From the facts presented, it appears Dr. Dube owed a duty of care to Plaintiff, and hence, liability could be imposed on Dr. Dube for any negligence involved. *Snelling v. Middleton,* 706 S.W.2d 891, 892 (Mo.App. 1986). Plaintiff claims a physician is responsible for the negligence of those he or she supervises, citing to *Burns v. Owens,* 459 S.W.2d 303, 305 (Mo.1970). The *Burns* court stated:

> As a general rule a physician is not liable for the negligence of hospital nurses, attendants, or interns who are not his employees unless they perform work or duties for him under his supervision and control, ... or unless the negligent acts were performed under conditions where, in the exercise of ordinary care, he could or should have been able to prevent their injurious effects and did not do so. *Id.*

We agree with Defendant that normally physicians are absolved of liability for the negligence of other hospital employees. *Burns,* 459 S.W.2d at 305. However, we believe a factual dispute remains concerning whether Plaintiff's situation falls within an exception to this general rule. Defendant may be liable for any negligence of Dr. Dube if Dr. Dube were working or performing duties for Defendant and were under Defendant's supervision and control or if Defendant could have prevented the death of Plaintiff's fetus by exercising ordinary care. *Id.* In fact, Dr. Dube stated in her deposition that Defendant was her immediate supervisor that evening. Dr. Dube called Defendant to ask if City Hospital were required to accept Plaintiff's transfer. Defendant instructed Dr. Dube to call Jewish Hospital and arrange the transfer. Defendant further told Dr. Dube what medication to have Jewish Hospital administer prior to Plaintiff's transfer. Dr. Dube failed to do either of these things. Defendant did not follow up until after seeing to another patient. When Defendant did ask about Plaintiff, she apparently did nothing after being told Dr. Dube never called Jewish Hospital back.

There are sufficient facts from which we may infer Dr. Dube was performing duties

for Defendant. If Dr. Dube had called Jewish Hospital as Defendant instructed, she would have been told Plaintiff had already been sent to City Hospital. Then, regardless of any negligence on the part of Jewish Hospital, City Hospital's Emergency Department would have been expecting Plaintiff and would have known to send her immediately to Labor and Delivery.

In Plaintiff's Motion for Rehearing, she enclosed a portion of her expert's deposition in which he stated since Defendant prescribed Ritodrine, she should have known Plaintiff would have needed to get to the Labor and Delivery Unit as quickly as possible. Therefore, Defendant should have either instructed Dr. Dube to immediately notify the emergency room at City Hospital of Plaintiff's impending transfer or done so herself. Defendant knew City Hospital had to accept uninsured transfer patients such as Plaintiff, so she knew Plaintiff would be transferred at some point. Plaintiff claims since Defendant knew the gravity of her medical condition, Defendant should have checked sooner with Dr. Dube and then done something when she discovered Dr. Dube had not placed the call as instructed. We assume Plaintiff is arguing Defendant should have again ordered Dr. Dube to place the call to Jewish Hospital, called the City Hospital emergency department to warn about Plaintiff's high-risk condition and impending transfer, or called Jewish Hospital herself.

■ As we have explained, viewing all that was before the trial court in the appropriate procedural light,[1] we feel it erred in granting summary judgment in favor of Defendant. The facts and inferences viewed favorably to Plaintiff disclose an existing factual dispute whether Defendant was negligent in supervising Dr. Dube by not following up her orders in a more timely fashion. Therefore, we reverse the summary judgment granted in favor of Defendant and remand for further proceedings.

1. The case cited by the dissent regarding negligent supervision (*Dine v. Williams*, 830 S.W.2d 453 (Mo.App.W.D.1992)) involved a review of alleged trial court evidentiary error, not at the summary judgment stage as in the present case, but after a trial. Appellate review of a trial court's action excluding evidence during trial is very deferential, *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993), for such rulings are presumed correct. *Anglim v. Missouri Pacific R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied*, ―― U.S. ――, 113 S.Ct. 831, 121 L.Ed.2d 701.

CRANE, P.J., dissents in dissenting opinion.

CRANDALL, J., concurs in opinion of DOWD, J.

CRANE, Judge, dissenting.

I respectfully dissent.

Dr. Magrane moved for summary judgment on the grounds that a physician-patient relationship did not exist at the time of the alleged malpractice. The trial court granted the motion. On appeal plaintiff argues the trial court erred because there is a genuine issue of material fact as to whether a physician-patient relationship existed.

In order to maintain a medical malpractice action against a doctor, a plaintiff must first establish a physician-patient relationship. *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 417–18 (Mo.App.1993). This relationship gives rise to the duty of care. *Id.*

> The existence of a duty owed by the defendant to the plaintiff is the cornerstone of any negligence action. Defendant is said to owe plaintiff a "duty" when defendant and plaintiff stand in such a relationship to each other that the law will impose upon defendant an obligation to conform his conduct to a standard of reasonable care for plaintiff's benefit. (footnote omitted)

*Snelling v. Middleton*, 706 S.W.2d 891, 892 (Mo.App.1986).

In support of her motion for summary judgment Dr. Magrane filed her affidavit in which she averred that she was the chief obstetrical resident of St. Louis City Hospital on the date of plaintiff's injury. On that date, she was at home when she received a telephone call from Dr. Joyce Dube, a junior resident at City Hospital. Dr. Dube informed Dr. Magrane that she needed assistance with an emergency unrelated to this case. Dr. Dube also informed Dr. Magrane

that someone from Jewish Hospital had called asking permission to transfer a patient to City Hospital. The patient had presented at Jewish Hospital with spontaneous rupture of the membranes and early labor. Dr. Magrane told Dr. Dube that she would come to the hospital to assist Dr. Dube with the emergency and that Dr. Dube should call Jewish Hospital to discuss the transfer of the patient, but that Jewish Hospital should give the patient Ritodrine to prevent active labor during transfer. When Dr. Magrane arrived at City Hospital, she began assisting Dr. Dube with the other emergency. Dr. Magrane asked Dr. Dube about the patient from Jewish Hospital. Dr. Dube said that she had not been able to call Jewish Hospital back in order to discuss that patient's transfer because she had been busy with multiple patients and problems at City Hospital. After Dr. Magrane had finished assisting Dr. Dube with the emergency, she returned to the labor and delivery area at which time she first learned that the patient had nonetheless been transferred to City Hospital from Jewish Hospital. By this time the fetus had died. Dr. Magrane argues that the facts in this affidavit were undisputed and establish as a matter of law that no physician-patient relationship existed between herself and plaintiff prior to the death of the fetus.

Plaintiff first argues a factual dispute exists because Jewish Hospital responded in an interrogatory answer that Dr. Wolfson of Jewish Hospital had discussed the possible transfer of plaintiff to City Hospital on the telephone with "the chief OB resident" at City Hospital, which, plaintiff argues, supports an inference that Dr. Wolfson spoke to Dr. Magrane about plaintiff's transfer. This hearsay statement is insufficient to raise a factual issue to defeat summary judgment. *State ex rel. Conway v. Villa,* 847 S.W.2d 881, 887 (Mo.App.1993). There is no other evidence in the record which would support an inference that Dr. Wolfson spoke to Dr. Magrane about the transfer.[1]

Plaintiff next contends that the physician-patient relationship was created before plaintiff was transferred to City Hospital because Dr. Magrane told Dr. Dube to tell Jewish Hospital to give plaintiff Ritodrine when transferring her, because the plaintiff was "referred" to Dr. Magrane, and because, as "on call" physician for City Hospital's OB-GYN Department, Dr. Magrane's duty began when plaintiff was referred. Plaintiff cites several out-of-state cases in support of these contentions; however, they are all factually distinguishable.

In *Hiser v. Randolph,* 126 Ariz. 608, 617 P.2d 774 (App.1980) the court held that a hospital's "on call" emergency room physician, by virtue of his hospital contract, had a physician-patient relationship with a patient who presented herself to the emergency room and whom the hospital asked him to treat. The case did not hold the relationship was created prior to the patient's arrival at the emergency room. Likewise, in *Dillon v. Silver,* 520 N.Y.S.2d 751, 134 A.D.2d 159 (N.Y.App.Div.1987) the court found a hospital's "on call" attending physician, who was contractually bound to accept all patients referred by the hospital, had a physician-patient relationship with a patient who was treated in the hospital's emergency room and referred to the defendant physician. Again, the case did not hold that the relationship was created prior to the patient's treatment and referral by the hospital with which defendant was under contract. In *Podvin v. Eickhorst,* 373 Mich. 175, 128 N.W.2d 523 (1964) the Michigan Supreme Court held that, if a physician-patient relationship existed between plaintiff and defendant, a private physician, it arose as a result of the referral of plaintiff's case by a prior physician to the defendant physician. The case did not hold that a private hospital's decision to transfer a patient to a public hospital was a personal "referral" to the chief OB-GYN resident of the public hospital which created a physician-patient relationship with the chief OB-GYN resident prior to transfer. In *Bienz v. Central Suffolk Hosp.,* 557 N.Y.S.2d 139, 163 A.D.2d 269 (N.Y.App.Div.1990) the court held that a question of fact as to the existence of a physician-patient relationship existed where the patient had personally telephoned a phy-

---

1. Dr. Wolfson testified in his deposition that he did not speak with the chief resident at City Hospital about making the transfer, but spoke with another resident.

sician and received advice over the telephone. The case did not address whether instructions from a physician to another physician about what to tell another hospital to do which were never conveyed to the hospital or the patient created a physician-patient relationship. None of these cases supports an argument that Dr. Magrane's duty to act as plaintiff's physician arose before plaintiff became an OB–GYN patient at City Hospital and Dr. Magrane was called or notified by City Hospital to treat her.

Plaintiff finally argues that a physician-patient relationship existed because Dr. Magrane negligently supervised Dr. Dube by not following up on her directions to Dr. Dube to telephone Jewish Hospital to discuss plaintiff's transfer. Plaintiff's full argument on this issue is set out in her brief as follows:

> As between Defendant Magrane and Dr. Dube, a physician is responsible for the negligence of those he supervises. *Burns v. Owens,* 459 S.W.2d 303, 305 (Mo.1970). Defendant Magrane was Dr. Dube's supervisor. (L.F. 38). Defendant Magrane instructed Dr. Dube to call Jewish Hospital and arrange the transfer. (L.F. 38). Dr. Dube failed to carry out Defendant's instructions. (L.F. 38–39). Defendant Magrane failed to follow up on her directions to Dr. Dube until after an hour had passed. (L.F. 38–39). The one hour delay in treating Plaintiff and admitting her to the labor and delivery room constituted malpractice.

> Dr. Semones testified that Defendant Magrane was Dr. Dube's supervisor and was ultimately responsible for any actions that Dr. Dube did or did not do. (Semones Depo P. 33).

It must first be observed that the existence of a physician-patient relationship is not shown by showing that the defendant physician is vicariously liable for another physician's negligence. Rather this is an alternate theory of liability.

Where a malpractice action is based on negligent supervision, the plaintiff must establish the standard of care of the attending physician. *Dine v. Williams,* 830 S.W.2d 453, 456 (Mo.App.1992). *Dine* addressed this issue as follows:

It is plaintiffs' primary focus that the attending physicians' liability is predicated on their failure to properly supervise the resident physicians. In that respect the plaintiffs must establish a standard of care of the attending physicians' duty to supervise the other doctors.

\* \* \* \* \* \*

The duty of supervision is not susceptible to easy determination and the amount of attention varies according to the particular circumstances of the case. *Marks v. St. Francis Hosp. and School of Nursing, Inc.,* 179 Kan. 268, 272, 294 P.2d 258, 261 (1956). The standard of care in supervising a resident physician by an attending physician is a technical subject outside the common knowledge and experience of a jury.

\* \* \* \* \* \*

The only standard of care testified to by plaintiffs' expert went to the medical care itself, not to the responsibility of the attending physicians or their duty as attending physicians. We hold that the contention an attending physician is negligent in failing to supervise resident physicians while the attending physician is "on duty" must be established by expert testimony and the amount of attention needed depends on the custom or practice of ordinarily diligent and careful physicians acting under the same or similar circumstances.

To support her contention that a genuine issue of material fact remained on the question of negligent supervision, plaintiff was required to present an expert opinion on the standard of care in her response to the summary judgment motion. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo. banc 1993). If the non-movant cannot contradict the showing of the movant, by affidavit or otherwise, judgment is properly entered against the non-movant. *Id.* at 381. *See Richardson,* 857 S.W.2d at 417.

In plaintiff's response to the motion for summary judgment, she claimed negligent supervision and made specific references to Dr. Magrane's affidavit, Dr. Fields' deposi-

tion, and Dr. Semones' deposition. She reiterates the reference to Dr. Semones' deposition in her brief. None of these references contains an expert opinion on the standard of care for a negligent supervisor. Dr. Magrane's affidavit states nothing about the standard of care for supervision or whether or not that standard was breached. Dr. Fields' deposition states nothing about Dr. Magrane's supervision of Dr. Dube. Dr. Semones testified:

> That still raises the question since Dr. Magrane was Dr. Dube's supervisor, and ultimately responsible for any actions that Dr. Dube did or didn't do.

This answer, not in response to any question, only states Dr. Semones' conclusion that Dr. Magrane is responsible for **"any actions"** of Dr. Dube by virtue of her position as a "supervisor." As a matter of law Dr. Magrane is not liable to plaintiff for "any actions" of Dr. Dube. Further, this evidence does not establish a medical standard of care. Dr. Semones' deposition testimony does not fulfill the requirement that plaintiff have an expert opinion establishing a standard of care and stating that Dr. Magrane fell below the standard care in her supervision of Dr. Dube. *See Dine*, 830 S.W.2d at 456, 457.

Plaintiff did not support her response to Dr. Magrane's motion for summary judgment with an expert opinion by way of deposition or affidavit which set out the applicable standard of care for supervision or opined that Dr. Magrane's supervision of Dr. Dube fell below the applicable standard of care. In the absence of expert opinion, plaintiff has not contradicted Dr. Magrane's motion for summary judgment on the grounds that Dr. Magrane could be vicariously liable.

Plaintiff failed to contradict Dr. Magrane's showing that there is no genuine issue of material fact and that Dr. Magrane is entitled to judgment as a matter of law. Accordingly, I would affirm the trial court's grant of summary judgment.