1999 ME 130

**William GAFNER et al.**

v.

**DOWN EAST COMMUNITY HOSPITAL.**

Supreme Judicial Court of Maine.

Argued June 7, 1999.
Decided Aug. 12, 1999.

Walter F. McKee, (orally), Sumner H. Lipman, Lipman & Katz, P.A., Augusta, for plaintiffs.

Martha C. Gaythwaite, (orally), Evan Smith, Friedman Babcock & Gaythwaite, Portland, for defendant.

Before WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] William and Janet Gafner and their daughter Shannon appeal from the summary judgment entered by the Superior Court (Washington County, *Marden, J.*) in favor of Down East Community Hospital on the Gafners' claims against the Hospital for professional negligence. On appeal, the Gafners claim, *inter alia:* (1) that the court exceeded the bounds of its discretion when it denied their motion for extension of time to designate an expert witness and granted the Hospital's motion to strike the designation; (2) that the Superior Court lacked authority under the Maine Health Security Act to rule on the Hospital's summary judgment motion; and (3) that we should allow suit against the Hospital on a theory of corporate liability. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] On May 27, 1990, Janet Gafner gave birth to her second child, Shannon, at Down East Community Hospital. William Gafner is Janet's husband and Shannon's father. Cynthia Sammis, M.D., was Janet's physician during Shannon's birth. During the delivery, Shannon's shoulders became lodged behind her mother's pubic bone. The Gafners allege that Shannon suffered a brachial plexus injury resulting from Dr. Sammis's negligence in responding to the medical emergency. They filed a notice of claim, pursuant to the Maine Health Security Act, 24 M.R.S.A. §§ 2501–2985 (1990 & Pamph.1998), alleging that Shannon's injury was caused by the professional negligence of Sammis and the Hospital.

[¶ 3] The Chief Justice of the Superior Court, as required by the Maine Health Security Act, appointed a person to serve as chair of the panel to screen the claim. *See* 24 M.R.S.A. § 2852(2)(A) (Pamph. 1998). The panel chair issued an order requiring each party to designate expert witnesses on or before October 30, 1996, and, on agreement of the parties, extended that date to April 1, 1997. The Gafners designated three medical expert witnesses and an economist regarding the alleged negligence of Dr. Sammis but did not designate any expert in reference to the Hospital's liability. Without timely seeking another extension, the Gafners designated George W. Russian on approximately August 8, 1997, noting in their designation that Dr. Russian would testify regarding the Hospital's failure to have in place certain written policies mandating Dr. Sammis's consultation with other physicians. On September 10, 1997, the Hospital filed a motion to dismiss the Gafners' notice of claim for failure to comply with the discovery order or, alternatively, to strike the Gafners' late designation of an expert witness. Also on September 10, 1997, the Hospital filed a motion for summary judgment.

[¶ 4] The panel chair issued an order referring the Hospital's motion to dismiss the notice of claim or to strike the late designation of experts to the Superior Court to be heard along with the Hospital's motion for summary judgment. After entry of that order, the Gafners filed a motion with the panel chair, seeking to extend the time within which to designate expert witnesses. Again, the panel chair referred the motion to the Superior Court. The Gafners did not object to the Chair's referral of any of the motions to the Superior Court.

[¶ 5] After hearing, the Superior Court denied the Gafners' motion for an extension of the time within which to designate experts. The court also granted the Hos-

pital's motion to strike the Gafners' late designation of Dr. Russian as an expert witness, but denied the Hospital's motion to dismiss the notice of claim for failure to comply with the discovery schedule. Finally, the court granted the Hospital's motion for summary judgment.

[¶ 6] After summary judgment was entered in favor of the Hospital, the Gafners' action against Dr. Sammis for professional negligence proceeded before the panel. A professional negligence decree regarding the actions of Dr. Sammis was entered by the screening panel on May 22, 1998.[1] The Gafners then filed a complaint in Superior Court alleging that Shannon's injuries were caused by the negligence of Dr. Sammis and the Hospital. *See* 24 M.R.S.A. § 2903 (1990 & Pamph.1998).

[¶ 7] Because the court had already entered judgment against the Gafners regarding the Hospital's liability, the trial would have proceeded only on the claims against Dr. Sammis. The Gafners filed a motion to certify as a final judgment the entry of summary judgment in favor of the Hospital pursuant to M.R. Civ. P. 54(b). The Superior Court (Washington County, *Kravchuk, C.J.*) granted the motion, allowing this appeal by the Gafners. The Hospital does not challenge the certification of the judgment as final. The only matters before us relate to the Gafners' claims against the Hospital.

## II. DISCUSSION

[¶ 8] During the course of the proceedings below, the Gafners presented three distinct theories of the Hospital's liability. First, they alleged that the Hospital was vicariously liable for Dr. Sammis's actions. They no longer pursue that claim. Next, they asserted that the Hospital was vicariously liable for the actions of the nurses. They continue to pursue that cause of action. And finally, they urged the adoption of a new theory of direct liability against hospitals or medical facilities referred to generally as "corporate liability." They did not timely develop a record during the panel proceeding related to their assertion of a new cause of action, thus creating the discovery dispute that constitutes a significant part of this appeal. We address those discovery matters first.

### A. Discovery Motions

[¶ 9] Three of the motions presented to the Superior Court related to discovery disputes in the panel proceeding. They were: the Hospital's motion to strike the designation of Dr. Russian, the Hospital's motion to dismiss based on the Gafners' failure to comply with the discovery deadlines, and the Gafners' motion to extend the time for designating experts.[2] The Gafners appeal the court's denial of their motion to extend the time for designating experts and the court's granting of the Hospital's motion to strike the late designation of Dr. Russian. Neither party challenges the court's denial of the motion to dismiss.

[¶ 10] Although the record discloses no abuse of discretion by the court, we conclude that the court's decisions on the discovery matters at issue are not reviewable on appeal.

[¶ 11] When a claim is pending before a panel, "[t]he chair ... may permit reason-

---

1. Under 24 M.R.S.A. § 2857(1) (1990), the final determinations of the panel are treated as private and confidential until trial. We need not set forth the panel's ultimate findings here.

2. The Gafners did not object to the chair's referral of their motion to extend time for designating experts to the Superior Court, notwithstanding the Act's requirement that any request for extension of time, whether or not related to discovery, *must be made to the panel chair, see* 24 M.R.S.A. § 2853(7) (Pamph.1998). The Superior Court has the general authority to rule on discovery motions referred by the chair. *See* 24 M.R.S.A. § 2852(6) (1990). On these facts, where there was no objection by the Gafners, the court did not exceed its authority when it ruled on all of the discovery motions referred by the panel chair.

able discovery." 24 M.R.S.A. § 2852(6) (1990). The panel chair must establish a schedule for discovery, *see* 24 M.R.S.A. § 2853(4) (Pamph.1998), and should rule on ordinary motions regarding discovery disputes. The panel chair may refer discovery disputes to the Superior Court, *see* 24 M.R.S.A. § 2852(6), and will generally do so when those disputes involve unique legal issues, such as privilege, *see* 24 M.R.S.A. § 2853(5) (Pamph.1998).[3] Because the purpose of the panel process is to "encourage early resolution" of claims, *see* 24 M.R.S.A. § 2851(1)(A) (1990), panel chairs are authorized to, and should, resolve ordinary discovery disputes without referral to the Superior Court.

■ [¶ 12] When the panel chair does refer discovery matters to the court, the court has the authority to act on those matters. *See* 24 M.R.S.A. § 2853(5). A court acting on discovery matters referred from the panel chair acts in place of the panel chair. Its actions are subject to the same provisions and remedial limitations as those of the chair. The decisions of the panel chair, including its discovery rulings, are not subject to appellate review. *See Sherburne v. Medical Malpractice Prelitig. Screening Panel*, 672 A.2d 596, 597 (Me.1996). Consequently, ordinary discovery orders entered by the Superior Court in matters pending before the panel are not reviewable.[4] We therefore do not review the court's orders on the motion to strike or motion to extend.

[¶ 13] We next address the *effect* of the court's order striking the late designation of Dr. Russian. All parties may agree to "bypass the panel and commence a lawsuit for any reason." 24 M.R.S.A. § 2853(5). In such a case, the matter will be presented to the jury (or court) without reference to the panel process. The bypassing of the entire panel process by agreement of all parties, however, should not be confused with the process by which the Superior Court acts in the stead of the panel on discovery matters referred from the panel chair. Even when the referral regarding discovery matters occurs on agreement of all parties, the matter remains pending before the panel until its findings have been entered. The court's authority to fashion a remedy for a discovery violation, when it acts on discovery matters referred from the panel chair, is limited to the authority given to the panel chair.

■ ˙ [¶ 14] The most serious penalty available to the chair, or the court acting in the chair's stead, is the authority to dismiss the claim pending before the panel with prejudice. *See* 24 M.R.S.A. § 2853(8)(B)(1)–(2) (Pamph.1998).[5] The panel chair does not have the authority, at any time, to enter a *judgment* against any party. Because the court's authority to fashion remedies resulting from discovery orders is limited to the authority possessed by the chair, the extent of the court's authority, when it is called upon to rule on discovery disputes in matters pending be-

3. The Act provides that the chair "may rule on requests regarding discovery, or may allow the parties to seek a ruling in the Superior Court." 24 M.R.S.A. § 2852(6).

4. Any discovery disputes affecting the presentation of the case in the Superior Court may be raised with the Superior Court prior to trial in that forum, thus preserving the party's right to appellate review. We do not address the possibility that a judicial order in a panel discovery matter related to issues such as privilege may be immediately subject to appellate review. *See Lewellyn v. Bell*, 635 A.2d 945, 947–48 (Me.1993); *Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 197–200 (Me.1990).

5. A dismissal of a claim "is deemed to be the equivalent of a finding for the defendant on all issues before the panel." 24 M.R.S.A. § 2853(8)(B)(2) (Pamph.1998). Because the court denied the Hospital's motion to dismiss, we need not decide whether a dismissal of the claims would have a different effect on the Superior Court's action on subsequent motions. *See* 24 M.R.S.A. § 2903(1)(B) (1990 & Pamph.1998); *Irish v. Gimbel*, 1997 ME 50, ¶ 19, 691 A.2d 664, 673 (Me.1997) (unscreened claims may not be pursued in the Superior Court); *Dutil v. Burns*, 1997 ME 1, ¶ 2, 687 A.2d 639, 640 (Me.1997) (all claims must be preceded by screening by panel).

fore the panel, is to remand the matter to the panel for further proceedings consistent with its discovery ruling.

[¶ 15] The result of the court's decisions on the discovery motions must be to remand any claims surviving the motion for summary judgment to the panel for appropriate action.[6] If the Superior Court had entered *judgment* against the plaintiffs directly as a result of its discovery rulings on behalf of the panel chair, it would have exceeded its authority. The court, however, entered judgment on the motion for summary judgment, a decision which we next address.

## B. Summary Judgment

[¶ 16] The Hospital's motion for summary judgment presented two separate grounds for entry of judgment in its favor. First, it argued that the failure of proof resulting from the lack of an expert mandated judgment in its favor. Second, it argued that the Gafners could not, as a matter of law, succeed on their direct liability claim against the Hospital because the cause of action asserted against the Hospital—corporate negligence related to the promulgation of hospital policies—has not been recognized in Maine.

[¶ 17] We conclude that the Hospital's first argument may not be presented to the Superior Court during the pendency of the panel proceedings. We agree with the Superior Court, however, that the Gafners have failed to state a claim of "corporate liability."

### 1. The Missing Expert

■ [¶ 18] The Hospital first argues that it is entitled to judgment because the Gafners failed to designate an expert before the panel. If this matter had been

pending in the Superior Court on the Gafners' complaint, that argument would be persuasive. *See Hamor*, 483 A.2d at 722–23.

■ [¶ 19] Because, however, the matter had not yet reached the complaint phase of the proceedings, the court was only authorized to consider affirmative defenses or other similar issues. *See* 24 M.R.S.A. § 2853(5). Evidentiary failure is not an affirmative defense, and we conclude that it does not fall within the other "issues" anticipated by the language of section 2853(5). *See id.* (allowing "certain preliminary legal affirmative defenses or issues [to] be litigated prior to submission of the case to the panel"). The "preliminary" legal issues envisioned by that section are those that will be dispositive without the need for a review of the quality of the evidence regarding professional negligence expected to be presented to the panel.

[¶ 20] Nonetheless, the Hospital argues that the Superior Court should be allowed to consider its motion for summary judgment on this issue in order to avoid duplicative and wasteful proceedings. Implicit in the Hospital's argument is the assumption that the Gafners will not be entitled to further discovery in the complaint phase of the proceeding. Hence, it argues, a plaintiff who fails to present persuasive facts before the panel will be precluded from augmenting those facts in the Superior Court.

[¶ 21] The Hospital's argument on this point is premature. Whether the Gafners may designate Dr. Russian or any other expert in the Superior Court has yet to be decided by that court. Until the matter has been presented to the Superior Court after the filing of the complaint, and until the Superior Court has ruled on any dis-

---

**6.** The Gafners have not designated any other expert regarding the Hospital's liability. In the absence of an expert witness, the Gafners cannot establish a claim of professional negligence against the Hospital before the panel, whether on issues of vicarious liability as to the nurses or on issues of direct corporate

liability. *See Hamor v. Maine Coast Memorial Hosp.*, 483 A.2d 718, 722–23 (Me.1984). We recognize, therefore, that the remand to the panel will be *pro forma* only, in order to allow the panel to enter findings in favor of the Hospital. *See* 24 M.R.S.A. § 2855 (1990 & Pamph.1998).

covery disputes that may be presented to it, that court cannot determine whether the Gafners' evidence will withstand a motion for summary judgment.

[¶ 22] We decline the Hospital's invitation to collapse the process into a unitary event. The panel screening process is intended to be just that—an independent mechanism for the initial screening of claims of professional negligence. The process was not intended to result in final, binding determinations on a plaintiff's evidence. Some duplication is inherent in the process chosen by the Legislature to address perceived problems in the litigation of professional negligence claims, although the potential for duplication will be somewhat alleviated by the operation of 24 M.R.S.A. § 2857(3) (Pamph.1998), which makes it clear that discovery conducted during the panel process will be deemed part of discovery in subsequent court actions.

[¶ 23] In summary, the Maine Health Security Act does not confer upon the Superior Court the authority to finally resolve factual issues related to allegations of professional negligence that are presented to a prelitigation screening panel. Although the panel chair or the parties may refer certain preliminary matters to the Superior Court before the ultimate issues are submitted to the panel, the panel alone has the authority under the Act to decide initially whether the plaintiffs have met their burden of proof in demonstrating that the healthcare practitioner or provider deviated from the applicable standard of care and whether that deviation proximately caused the plaintiffs' injuries. *See* 24 M.R.S.A. § 2855(1)(A)–(B).

[¶ 24] Therefore, to the extent that the Hospital moved for summary judgment on the basis of the Gafners' failure to timely designate an expert *for purposes of the panel hearing,* such a motion may not be presented to the Superior Court until a complaint has been filed in the Superior Court and that court has addressed the designation of experts and other discovery matters in the separate context of the Superior Court proceeding.

2. Corporate Liability

[¶ 25] We move then to the Hospital's assertion that the Gafners cannot proceed against the Hospital because we have not yet recognized a claim of corporate liability against a hospital.

(a) Authority of Superior Court to Entertain Motion

[¶ 26] We first address the court's authority, under 24 M.R.S.A. § 2853(5), to rule on the Hospital's motion asserting that the Gafners' corporate liability claim does not state a cause of action under Maine law.

[¶ 27] The Maine Health Security Act provides that the panel's primary role is to determine whether the healthcare practitioner or healthcare provider deviated from the applicable standard of care and whether that deviation was the proximate cause of the plaintiff's injury. *See* 24 M.R.S.A. § 2855(1)(A)–(B). The purpose of the panel process is to act as a screening device for claims of professional negligence with the goals of early resolution of all claims, to be accomplished by encouraging settlement of obviously meritorious claims, discouraging litigation of meritless claims, and leaving for trial only those claims where a meaningful dispute over liability exists. *See* 24 M.R.S.A. § 2851(1).

[¶ 28] Because the panel's responsibility is to focus on the existence *vel non* of professional negligence, it lacks the authority, absent the agreement of the parties, to dispose of legal affirmative defenses or issues that are collateral to the central issue of negligence. *See* 24 M.R.S.A. § 2853(5). Just as the Superior Court is not authorized to evaluate the evidence when the matter is pending before the panel, the panel may not rule on preliminary matters that are to be decided as a matter of law. This statutory scheme allows the panel to focus on the

merits of each claim of professional negligence, without the need to resolve dispositive collateral legal matters, which are generally not within the expertise or purview of the panel.

■ [¶ 29] Matters appropriately referred to the Superior Court pursuant to section 2853(5) may include statute of limitation defenses, *see Welch v. McCarthy,* 677 A.2d 1066, 1068 (Me.1996); allegations of failed notice, *see Champagne v. Mid–Maine Med. Ctr.,* 1998 ME 87, ¶¶ 17–18, 711 A.2d 842, 847–48; or res judicata defenses, *see Dutil v. Burns,* 1997 ME 1, ¶ 5, 687 A.2d 639, 641. *See generally* M.R. Civ. P. 8(c). In addition, other "issues" that can be adjudicated in a "preliminary" fashion, may be appropriately referred to the court by motion. *See* 24 M.R.S.A. § 2853(5).

[¶ 30] A motion based on the assertion that the cause of action upon which the claimant has based her claim before the panel does not exist is the kind of other "issue" that the Legislature intended to allow the Superior Court to address. We conclude, however, that such a motion must be treated as a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), asserting a failure to state a claim upon which relief can be granted. Motions to dismiss pursuant to Rule 12(b)(6) may be properly presented to the Superior Court pursuant to 24 M.R.S.A. § 2853(5). *See Dutil,* 1997 ME 1, ¶ 5, 687 A.2d at 641;[7] *Choroszy v. Tso,* 647 A.2d 803, 805 n. 1 (Me.1994). If the claimant could not, under any set of facts, make out a cause of action against the respondent, it would be senseless for the panel, the parties, and the court to go through the motions of adjudicating the

claim. The motion was therefore properly presented to the court, and the court had the authority to consider entering judgment on the motion.

### (b) Merits of Corporate Liability Claim

■ [¶ 31] We turn then to the final issue in this matter, whether we should adopt into the common law of the State of Maine a cause of action against hospitals and other medical facilities referred to as "corporate liability." As discussed herein, we use the term corporate liability to encompass only those theories of liability predicated upon a more general obligation of hospitals to insure the quality of care within the institution. We do not intend the term to incorporate concepts of vicarious liability[8] or other types of direct liability occasioned by a hospital's breach of a previously recognized duty.[9]

[¶ 32] For purposes of this analysis, we accept the Gafners' factual assertion that the Hospital "failed to have in place at the time of Shannon Gafner's birth a written policy *requiring mandatory consultation*" with a specialist in high risk births. *See Thompson v. Nason Hosp.,* 527 Pa. 330, 591 A.2d 703, 707 (1991). No duty to promulgate such policies existed at common law, nor has the Legislature placed such a duty on the Hospital. Nonetheless, the Gafners ask us to recognize a duty on the part of a hospital to adopt rules and policies controlling the actions of independent physicians practicing within its walls.

[¶ 33] In determining whether a duty exists, many factors must be considered, including " 'the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social

---

7. The motion in *Dutil* was probably mischaracterized as a motion pursuant to M.R. Civ. P. 12(b)(6) because it more closely resembled a challenge to the sufficiency of process. *See Dutil,* 1997 ME 1, ¶ 5, 687 A.2d at 641.

8. The Gafners concede that, because Dr. Sammis was not an agent of the Hospital, the Hospital cannot be held vicariously liable for her alleged negligence. *Cf. Phillips v. Eastern Me. Med. Ctr.,* 565 A.2d 306, 307 (Me.1989);

*Forbes v. Osteopathic Hosp.,* 552 A.2d 16, 17 (Me.1988).

9. *See generally Shaw v. Bolduc,* 658 A.2d 229 (Me.1995) (recognizing hospital's liability for breach of duty of care by its own staff); *Gammon v. Osteopathic Hosp. of Me., Inc.,* 534 A.2d 1282 (Me.1987) (recognizing unique duty of care regarding body parts).

ideas as to where the loss should fall.'" *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me.1988) (quoting William L. Prosser, *Palsgraf Revisited*, 52 MICH L. REV. 1, 15 (1953)).

[¶ 34] Addressing those policy considerations, the Gafners rely heavily on the analysis of the Pennsylvania Supreme Court in *Thompson*. There, the court adopted a theory of corporate liability, allowing a hospital to be held liable if it "failed to monitor and review medical services provided within its facilities." *Id.* at 708. The court suggested that a hospital's duties could be separated into four general areas:

> (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* at 707 (footnote and citations omitted).[10]

[¶ 35] Some form of this cause of action has been adopted in many other states,[11] and is largely recognized as stemming from the decision of the Illinois Supreme Court in *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253 (1965); *see Pedroza v. Bryant*, 101 Wash.2d 226, 677 P.2d 166, 168 (1984) (en banc). The theory has also sparked a great deal of commentary, including an article urging this Court to adopt the corporate liability theory in Maine. *See* C. Elisabeth Belmont, Comment, *Hospital Accountability in Health Care Delivery*, 35 ME. L. REV. 77 (1983). Proponents of the theory present a number of justifica-

tions in its support. Most prominent is the concept that hospitals are no longer viewed as the mere physical facilities in which doctors do their work, but are rather viewed as comprehensive healthcare centers that "provide and monitor all aspects of health care." *See* David H. Rutchik, Note, *The Emerging Trend of Corporate Liability: Courts' Uneven Treatment of Hospital Standards Leaves Hospitals Uncertain and Exposed*, 47 VAND. L. REV. 535, 538 (1994). Thus,

> [b]ecause hospitals offer comprehensive medical services within a corporate structure, courts have found that the public reasonably may rely on the hospital itself as a health-care provider. The public expects to be treated and cured by the hospital rather than by particular nurses or other employees who provide patient care. Accordingly, patients often believe that the various health-care practitioners within the hospital render care collectively on the hospital's behalf.... [T]he increased public reliance on sophisticated, profit-generating hospitals [is] a major reason for imposing corporate liability.

*Id.* at 539 (footnotes omitted). *See, e.g., Strubhart v. Perry Mem'l Hosp. Trust Auth.*, 903 P.2d 263, 275 (Okla.1995); *Thompson*, 591 A.2d at 706–07; *Pedroza*, 677 P.2d at 169; *Darling*, 211 N.E.2d at 257. Other rationales offered in justification for the doctrine of corporate liability include the belief that "a hospital is in the best position to monitor and control its staff physicians." *See* Rutchik, *supra*, at 549. *See, e.g., Pedroza*, 677 P.2d at 169; *see also, e.g.*, Gregory T. Perkes, Casenote, *Medical Malpractice—Ostensible Agency and Corporate Negligence*, 17 ST. MARY'S L.J. 551, 573 (1986) (explicating *Brownsville Med. Ctr. v. Gracia*, 704 S.W.2d 68

---

**10.** The *Thompson* court was careful to qualify the rule by noting that, "for a hospital to be charged with negligence, it is necessary to show that the Hospital had actual or constructive knowledge of the defect or procedures which created the harm, Furthermore,

the Hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." *Thompson*, 591 A.2d at 708 (citations omitted).

**11.** *See, e.g., infra* notes 14 and 15.

(Tex.App.1985)), *cited in Thompson*, 591 A.2d at 706 n. 4.

[¶ 36] Notably, the theory is also understood to have been generated by the "judicial desire to place liability on the party most able to pay." *See* Perkes, *supra* at 573. *See also* Rutchik, *supra*, at 549 (citing *Pedroza*, 677 P.2d at 169).

[¶ 37] This evolving theory of liability, however, has not been universally embraced. At least one critic has decried the result as misguided economic policy making on the part of the courts. *See, e .g., Thompson*, 591 A.2d at 709 (Flaherty, J., dissenting). Declaring the cause of action to represent a "deep pocket" approach, Justice Flaherty offered the following observations:

> In adopting this new theory of liability, the majority is making a monumental and ill-advised change in the law of this Commonwealth. The change reflects a deep pocket theory of liability, placing financial burdens upon hospitals for the actions of persons who are not even their own employees. At a time when hospital costs are spiraling upwards to a staggering degree, this will serve only to boost the health care costs that already too heavily burden the public. Traditional theories of liability, such as respondeat superior, have long proven to be perfectly adequate for establishing corporate responsibility for torts.

*Id.* at 709 (Flaherty, J. dissenting). Others have concluded that, "[i]n its adoption of a general 'duty to oversee all persons who practice medicine within its walls as to patient care,' the *Thompson* court neither provided guidance as to the extent to which hospitals must now monitor staff physicians, nor did it articulate the standard of care to which hospitals must adhere." Judith M. Kinney, Casenote, *Tort Law—Expansion of Hospital Liability Under the Doctrine of "Corporate Negli-*

*gence,*" 65 TEMP. L. REV. 787, 797 (1992) (footnote omitted). *See* Mark E. Milsop, Comment, *Corporate Negligence: Defining the Duty Owed by Hospitals to Patients*, 30 DUQ. L. REV. 639, 643 (1992) (noting that, despite the *Thompson* court's broad statement of the general rule, "the question remains as to exactly what the rule's boundaries are"); *cf.* Rutchik, *supra*, at 566 (arguing that "[w]ithout consistent judicial application of the standards, corporate liability presents hospitals with the daunting specter of potentially limitless liability").[12]

[¶ 38] We traditionally approach the adoption of a new cause of action with caution. *See, e.g., Hottentot v. Mid–Maine Med. Ctr.*, 549 A.2d 365, 368–69 (Me.1988). In this area of complex public policy affecting the process by which medical decisions are made, as well as the safety of patients, the welfare of the public, and economic forces as yet unexplicated, we must be no less cautious.

[¶ 39] The balancing of interests implicated by the changing nature of hospitals has been undertaken in some depth by the Legislature. Consistent with the growing recognition of an independent duty on the part of hospitals to assure the credentials of physicians practicing with their facilities, the Legislature has considered the relationship between hospitals and physicians and has placed very specific duties upon hospitals. Among those duties is the obligation to assure that "[p]rovider privileges extended or subsequently renewed to any physician are in accordance with those recommended by the medical staff as being consistent with that physician's training, experience and professional competence." 24 M.R.S.A. § 2503(2) (1990). To date, however, the Legislature has not chosen to place upon hospitals a specific duty to regulate the medical decisions of

---

12. Other commentators have noted that the general rule of corporate liability inappropriately places hospitals in the role of insurer for all physicians and medical staff who practice within their facilities. *See* Martin C. McWilliams Jr. & Hamilton E. Russell III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C.L. REV. 431, 473–74 (1996).

the physicians practicing within the facility.[13]

[¶ 40] Nonetheless, the Gafners would have us incorporate into Maine law a theory of corporate liability for failure to have explicit policies in place controlling the actions of independent physicians. This formulation of the theory of liability has only been recognized by a few jurisdictions.[14] Instead, most courts that have recognized the cause of action referred to as corporate liability have grounded the claim upon the responsibility of the facility to assure that physicians practicing in the facility are properly credentialed and licensed.[15] For example, in *Pedroza*, the Washington Supreme Court gave the following description of its theory of corporate liability:

> The doctrine of corporate negligence has ... been utilized by courts to require hospitals to exercise reasonable care to insure that the physicians selected as members of hospital medical staffs are competent. [Those courts] have also held that hospitals have a continuing duty to review and delineate staff privileges so that incompetent staff physicians are not retained.

*See Pedroza* at 168–69 (citations omitted). This expression of the duty is similar to the Maine Health Security Act's own provisions. *See* 24 M.R.S.A. § 2503(2).

[¶ 41] In contrast, the Gafners' proposed theory of "corporate liability" has not yet gained significant acceptance in other jurisdictions and has not been addressed by our own Legislature. Moreover, no study of the effects of such a change in the law has been undertaken. Creating a duty that would place external controls upon the medical judgments and actions of physicians should not be undertaken without a thorough and thoughtful analysis.

[¶ 42] We decline to create such a duty from whole cloth and therefore decline to recognize the cause of action suggested by the Gafners. There are a number of reasons for our refusal to accept the Gafners' theory of liability against the Hospital. Private hospitals in Maine are extensively regulated. The Legislature has created duties and guidelines for the actions of those hospitals in a number of areas. Before the expansion of tort liability into an area that has been significantly controlled by the Legislature, we should allow the Legislature to address the policy considerations and determine whether imposing such a duty constitutes wise public policy.

[¶ 43] Moreover, creating a duty on the part of hospitals to control the actions of those physicians who have traditionally been considered independent contractors may shift the nature of the medical care provided by those physicians. In an area as replete with the possibility of unexpect-

---

13. The Gafners no longer claim that the Hospital failed in its duty regarding Dr. Sammis's privileges. *See* 24 M.R.S.A. § 2503(2). Although originally stated in their notice of claim, this allegation was not pressed by the Gafners in their objection to the Hospital's motion and is not argued before this Court. The Gafners also do not claim that the Hospital failed to provide appropriate facilities or equipment.

14. *See, e.g., Denton Reg'l Med. Ctr. v. LaCroix,* 947 S.W.2d 941, 950 (Tex.App.1997); *Thompson,* 591 A.2d at 707; *Darling,* 211 N.E.2d at 258.

15. *See, e.g., Elam v. College Park Hosp.,* 132 Cal.App.3d 332, 183 Cal.Rptr. 156, 165 (1982); *Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544, 550 (1977); *Insinga v. LaBella,* 543 So.2d 209, 211 (Fla.1989); *Mitchell County*

*Hosp. Auth. v. Joiner,* 229 Ga. 140, 189 S.E.2d 412, 414 (1972); *Ferguson v. Gonyaw,* 64 Mich.App. 685, 236 N.W.2d 543, 550 (1975); *Corleto v. Shore Mem'l Hosp.,* 138 N.J.Super. 302, 350 A.2d 534, 538 (N.J.Super.1975); *Raschel v. Rish,* 110 A.D.2d 1067, 488 N.Y.S.2d 923, 925 (N.Y.App.Div.1985), *aff'd* 69 N.Y.2d 694, 512 N.Y.S.2d 22, 504 N.E.2d 389 (1986); *Benedict v. St. Luke's Hosps.,* 365 N.W.2d 499, 504 (N.D.1985); *Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 553 N.E.2d 1038, 1045 (1990), *overruled on other grounds by Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 628 N.E.2d 46 (1994); *Rodrigues v. Miriam Hosp.,* 623 A.2d 456, 462–63 (R.I.1993); *Pedroza,* 677 P.2d at 168; *Johnson v. Misericordia Community Hosp.,* 99 Wis.2d 708, 301 N.W.2d 156, 164 (1981).

ed or unintended consequences as this, we should exercise restraint in the use of our authority to create new causes of action. As the concurrence commented in *Hottentot*, "[w]hen the legislative and the executive branches have the extensive involvement they do in this area and yet have declined to provide judicial remedies" sought by the plaintiffs, "we should likewise stay our hand as a common law court." *Hottentot*, 549 A.2d at 370 (Hornby, J., concurring).

[¶ 44] In sum, there exist serious and unanswered public policy questions regarding the wisdom of requiring hospitals to control the medical judgments and actions of independent physicians practicing within their facilities. Those questions implicate both quality of care and economic considerations. We will not lightly adopt a new theory of liability in an area of such significant concern for the public health. We decline to do so here.

The entry is:

Judgment in favor of the Hospital on the Gafners' claim of corporate liability against the Hospital is affirmed. Judgment as to the Gafners' claim of vicarious liability for the actions of the nurses is vacated and remanded to the Superior Court for remand to the panel for further proceedings consistent with this opinion.

