MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2025 ME 36
Docket:       Pen-24-224
Argued:       December 12, 2024
Decided:      April 15, 2025

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.


STEWART CARNEY JR. et al.

v.

HANCOCK COUNTY et al.


MEAD, J.

[¶1]  The estate of an inmate who died by suicide at the Hancock County Jail and the inmate's surviving spouse filed a medical malpractice notice of claim against the County and several county officials and employees.  The County and several of its employees[1] (collectively the County Appellants) and Jail Housing Officer Kayla Dumond appeal from an order entered in the Superior Court (Penobscot County, *A. Murray, J.*) denying their motions for summary judgment.  This interlocutory appeal presents two issues: (1) whether any or all of the defendants are "health care providers" within the

---

[1]  The employees that joined with the County in the motion for summary judgment were Scott Kane, Timothy Richardson, Frank L. Shepard, Noah Lewey, Travis Young, Russell Wilson, Christoper Stanley, and Jillian Jones.  The other named defendants in this lawsuit—Alicia Lambert, William A. Schaffer, Aroostook Mental Health Services, Inc. (AMHC), John Doe I, and John Doe II—did not move for summary judgment or appeal.

meaning of the Maine Health Security Act, 24 M.R.S. §§ 2501-2988 (2025); and (2) whether the defendants are immune from liability for the claim. Because the first issue is not reviewable in an interlocutory appeal and we defer to the federal court in which a comprehensive lawsuit regarding the second issue is pending, we dismiss the appeal.

## I. BACKGROUND

[¶2] The following facts are drawn from the summary judgment record[2] and viewed in the light most favorable to Carney and the Estate as the nonprevailing parties. *See Fama v. Bob's LLC*, 2024 ME 73, ¶ 2, 322 A.3d 1247.

[¶3] Monica J. Johnson was incarcerated at the Hancock County Jail from September 21, 2018, to September 29, 2018. At the time of Johnson's incarceration, Hancock County contracted with Aroostook Mental Health Services, Inc. (AMHC) and Chelsea Howard, N.P., to provide mental health services to those incarcerated at the Jail. The County's contract provides that AMHC will provide the Jail with the following services:

---

[2] Maine Rule of Civil Procedure 56(h) limits the facts that the court may consider to the facts that are set forth in the following statements and that are properly supported by admissible evidence (which must be referenced in the statements): (1) the statement of materials facts of the moving party or parties; (2) the opposing statement of material facts of any nonmoving parties; (3) the additional statement of materials facts of any nonmoving parties; and (4) the reply statement of materials facts of the moving party or parties. We consider only the facts that are in those statements and supported by admissible evidence. *See Berry v. MaineStream Fin.*, 2019 ME 27, ¶ 7, 202 A.3d 1195.

a. up to 4 hours per week of care coordination services with qualified staff to assess the behavior needs of inmates, consult with a psychiatrist about what interventions [are] needed, coordinate with the medical provider to implement recommendations made by the psychiatrist, [and] support referrals to community resources when needed.

b. up to 3 hours per month of psychiatric services through clinical consultation with the care coordinator and medical staff.

AMHC assigned the "psychiatric services" portion of the contract to Community Health and Counseling Services, who employed Dr. William A. Schaffer. A separate contract with Howard required her to

a. review and approve all written medical policies established for the Jail;

b. review all inmate medical requests and determine appropriate responses to each inmate's need;

c. conduct a physical exam, if requested, for each inmate within 8 days of being admitted; and

d. be available for telephone consultation 24 hours per day.

[¶4] The Jail also maintains the following policies establishing the responsibilities of correctional officers to prevent inmate suicide:

- Policy A-203, titled "Housing Officer Post Orders," details the duties of Housing Officers, including the duty to "[w]rite incident reports for unusual activities. Written incident reports are to be forwarded to the shift supervisor before leaving shift unless giving permission to submit at the beginning of next working shift."

4

- Policy B-135, titled "Inmate Suicide," states: "All personnel will constantly be aware of the potential for inmate suicide attempts. Prompt and effective response to suicide attempts is essential to minimize injury and potential loss of life."

- Policy C-112, titled "Prisoner Screening – Referrals," states: "Hancock County Jail recognizes that the sooner an inmate's mental health and substance abuse issues are identified, the greater the likelihood that psychotic and substance abuse crises may be averted." The policy goes on to provide that "[w]hen an inmate is deemed to be suicidal, the Corrections Officer shall implement the procedures outlined in Policy D-243."

- Policy D-205(B)(3), titled "Staff Briefing," states: "Prior to being relieved of duty, the Corrections Officer shall properly brief his/her relief of important events, circumstances, and/or situations relative to the post assignment."

- Policy D-243, titled "Special Management Inmates," states: "When information is received regarding an inmate and / or an inmate's behavior indicates a risk for suicide, the inmate will be placed on Suicide Watch."

[¶5] Throughout Johnson's incarceration, Dumond was a Housing Officer at Hancock County Jail, and all her interactions with Johnson were in this capacity; she was hired full-time on July 21, 2018, but worked as a part-time officer before that. Dumond completed workplace training on suicide prevention in May 2018. Dumond has never held any additional certification, registration, or license in medicine or the healing arts. Dumond was not involved in Johnson's admission screening to the Jail. To Dumond's knowledge, Johnson was never placed on suicide watch at the Jail.

[¶6]   On September 24, 2018, Johnson filled out an "Inmate Medical Request Form," writing, "Can I see the Psych doctor please ASAP!!!!"   On September 26, 2018, an AMHC crisis worker, Alicia Lambert, completed an initial safety assessment on Johnson, in addition to a screening form for suicide and for medical, mental, and developmental impairments.  The following day, Lambert provided Dr. Schaffer with a verbal summary of Johnson's condition. Dr. Schaffer conditionally diagnosed Johnson with substance-induced mood disorder and recommended increasing the dosage of the medication she had been prescribed at the Jail.

[¶7]  On September 28, 2018, two other inmates informed Dumond that Johnson was "crazy" and "was doing things that were crazy."  Dumond did not report this information to the next shift's staff or a supervisor, prepare an incident report, or speak with Johnson about the reported conduct.  Dumond knew that "common sense" required her to brief the next shift's staff and a supervisor on any unusual activities that occurred during her shift.

[¶8] Johnson took actions to end her life on September 29, 2018, and died as a result on October 4, 2018.

[¶9]  On September 24, 2020, Carney and the Estate filed a notice of claim in the Superior Court (Penobscot County) pursuant to the Maine Health

6

Security Act (MHSA).[3]  *See* 24 M.R.S. § 2853 (2025).  The following day, Carney and the Estate filed an amended notice of claim.[4]

[¶10]  On September 25, 2020, Carney and the Estate also filed a complaint in the United States District Court for the District of Maine.  The complaint names the same parties as the MHSA notice of claim and alleges the same facts.  The federal complaint contains three counts: (1) a claim under 42 U.S.C.A. § 1983 (Westlaw through Pub. L. No. 119-4) for deliberate indifference to medical and mental health needs; (2) a claim under 42 U.S.C.A. § 1983 for failure to train and supervise employees; and (3) a claim under 18-A M.R.S. § 2-804 (2018)[5] and 14 M.R.S. § 8104-C (2018)[6] for wrongful death.

---

[3]  This notice of claim was filed against Hancock County; Kane, in his individual capacity and capacity as sheriff of Hancock County; Dumond; Lewey; Young; Stanley; Jones; Wilson; Lambert; Richardson; Shepard; Schaffer; John Doe I; and John Doe II.

[4]  The amended notice of claim added AMHC as a defendant, in addition to the official capacities of Richardson and Shepard as Hancock County Jail Administrator and Assistant Jail Administrator, respectively.

[5]  The wrongful death statute is contained in Maine's Probate Code.  The Probate Code codified in Title 18-A has since been repealed and replaced by a new Probate Code now codified in Title 18-C. *See* P.L. 2017, ch. 402, §§ A-1, A-2 (repealing Title 18-A and replacing it with Title 18-C); P.L. 2019, ch. 417 § B-14 (amending the effective date of the repeal and replacement from July 1, 2019, to September 1, 2019).  The replacement wrongful death statute has since been amended, though the amendments are not relevant in the current appeal.  *See* P.L. 2023, ch. 390, § 3 (effective Oct. 25, 2023) (codified at 18-C M.R.S. § 2-807 (2025)).

[6]  Title 14 M.R.S. § 8104-C has since been amended, though the amendment is not relevant to this appeal.  *See* P.L. 2017, ch. 402, § C-30 (replacing the reference to 18-A M.R.S. § 2-804 with 18-C M.R.S. § 2-807) (codified at 14 M.R.S. § 8104-C (2025)); P.L. 2019, ch. 417, § B-14 (amending the effective date of the replacement from July 1, 2019, to September 1, 2019).

[¶11]  In October 2020, the Chief Justice of the Superior Court (*Mullen, C.J.*) appointed a chair of the prelitigation screening panel on the state court claim.  The County Appellants filed a motion to dismiss on the grounds that (1) the notice of claim failed to allege professional negligence against them and (2) they are not "health care providers or practitioners" within the meaning of the MHSA.  The prelitigation screening panel chair referred the motion to the Superior Court, and on April 26, 2021, the court (*A. Murray, J.*) granted the motion to dismiss because the amended notice of claim failed to allege claims of professional negligence against the County Appellants, without reaching whether they are subject to the MHSA.

[¶12]  In March 2021, the federal district court (*Rich, Mag.*) stayed the federal action and ordered that the federal lawsuit "will proceed on the merits of the plaintiffs' claims when either (i) the Superior Court determines that the defendants are not medical providers subject to the MHSA, or (ii) the Superior Court determines that the defendants are medical providers subject to the MHSA, and all of the MHSA's prelitigation requirements have been satisfied." *Carney v. Hancock Cnty.*, No. 1:20-cv-00349-GZS, 2021 WL 966849, at *2 (D. Me. Mar. 14, 2021) (alteration and quotation marks omitted).  In support of the stay until the determination by the Superior Court regarding the MHSA on

8

the pendent state claim, the federal district court noted that to "proceed with some but not all of the plaintiffs' claims when they arise from the same nucleus of alleged facts would be inefficient for the court and the parties." *Id.* (alterations and quotation marks omitted). In so ruling, it cited a previous decision in which the federal district court made clear that it was "not surrendering jurisdiction of the plaintiff's suit to the state court . . . but [was] instead merely allowing the state court to be the first to rule on a common issue in the interest of economy and efficiency." *Dyer v. Penobscot Cnty.*, No. 1:20-cv-00224-NT, 2020 WL 5801081, at \*4 (D. Me. Sept. 28, 2020) (alteration and quotation marks omitted).

[¶13] On July 15, 2021, Carney and the Estate filed a new notice of claim in Superior Court against Hancock County; Kane, in his individual capacity and in his capacity as sheriff for Hancock County and Hancock County Jail; Richardson, in his individual capacity and in his capacity as Hancock County Assistant Jail Administrator; Shepard, in his individual capacity and in his capacity as Hancock County Assistant Jail Administrator; Dumond; Lewey; Young; Wilson; Stanley; Jones; John Doe I; and John Doe II. In June 2022, the court (*A. Murray, J.*), on referral from the panel chair, granted Dumond's motion to dismiss the amended, initial notice of claim against her.

[¶14]   The Chief Justice of the Superior Court (*Mullen, C.J.*) again appointed a chair of the prelitigation screening panel on the new state court claim.  The County Appellants filed a motion to dismiss on the grounds that (1) the notice of claim is barred by *res judicata* and other procedural defects and (2) they are not "health care providers or practitioners" within the meaning of the MHSA.  Dumond filed a motion to dismiss on the same grounds.  On June 28, 2022, the court (*A. Murray, J.*), on referral from the panel chair, denied both motions to dismiss.  The panel chair subsequently consolidated the two pending notices of claim.

[¶15]  On July 10, 2023, the County Appellants and Dumond filed motions for summary judgment.  The assigned screening panel chair referred the motions to the Superior Court for resolution, and Carney and the Estate subsequently filed a cross-motion for summary judgment against Dumond. After hearing oral arguments on the motions on April 8 and 12, 2024, the court denied the cross-motions for summary judgment in a written order entered on April 24, 2024.  Specifically, the court determined that (1) it lacked jurisdiction to determine the applicability of the MHSA, (2) the County Appellants and Dumond failed to meet their burden in demonstrating that the claim is barred by the immunity and limitations provisions in the Maine Tort Claims Act

(MTCA), 14 M.R.S. §§ 8103, 8110, 8111(1)(C), 8116 (2025), and (3) it lacked jurisdiction to decide the cross-motion for summary judgment. The County Appellants and Dumond timely appealed. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2025).

[¶16] On May 23, 2024, Carney and the Estate moved to dismiss these appeals as interlocutory and not within an exception to the final judgment rule. The County Appellants and Dumond filed oppositions to the motion, and we ordered that the motion to dismiss be considered with the merits of the appeal.

## II. DISCUSSION

### A. Applicability of the MHSA

[¶17] We must first determine whether an exception to the final judgment rule justifies our reaching the merits of the denial of a motion for summary judgment. The County Appellants and Dumond argue that we can properly review the court's refusal to determine whether the MHSA applies to them because their substantial rights will be irreparably lost without such review due to the obligation to participate in the panel review process. Carney and the Estate assert that Dumond and the County Appellants' substantial rights will not be lost because the panel findings are not binding on the

factfinder and the matter will be returned to the federal court after the screening panel process.

[¶18]  An appeal from an order denying a motion for summary judgment is interlocutory, and we will generally not hear interlocutory appeals.  *See Fama*, 2024 ME 73, ¶ 7, 322 A.3d 1247.  "The death knell exception to the final judgment rule justifies consideration of issues raised on an interlocutory appeal only if awaiting a final judgment will cause substantial rights of a party to be irreparably lost.  A right is irreparably lost if the appellant would not have an effective remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation.  This exception is available only when the injury to the appellant's claimed right, absent appeal, would be imminent, concrete and irreparable."  *Salerno v. Spectrum Med. Grp., P.A.*, 2019 ME 139, ¶ 8, 215 A.3d 804 (alteration, citations, and quotation marks omitted.)  "Cost or delay alone is insufficient to establish the irreparable loss of a right."  *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 14, 974 A.2d 918.

[¶19]  We have previously held, in a case involving the application of the MHSA, that an appeal met the death knell exception because the appellant asserted that it was entitled to the "rights and protections provided by the MHSA" screening process.  *Salerno*, 2019 ME 139, ¶ 12, 215 A.3d 804.  There,

the defendant asserted that the plaintiff's claim was subject to the MHSA and, because the claim was not timely under the MHSA, it should be dismissed. *Id.* ¶ 4. We agreed to review the denial of the motion to dismiss, reasoning that, if the claim was in fact subject to the MHSA, allowing it to bypass the screening process would irreparably deprive the appellant of the statutory mechanism designed to encourage settlement, dissuade meritless litigation, and maintain confidential pre-suit proceedings. *Id.* ¶¶ 12-14.

[¶20] The inverse of this holding, as advanced by the County Appellants and Dumond, is not persuasive. The irreparable losses identified in *Salerno* do not adhere here because the protections of the MHSA remain available to the parties; the court's denial of the motions for summary judgment will result in the proceedings returning to the panel process with the protections identified in *Salerno*. *See* 24 M.R.S. § 2853(5).

[¶21] We also reiterate that the Superior Court has limited jurisdiction regarding the issues referred by the prelitigation screening panel. Once a claim is pending before the prelitigation screening panel, the matters that may be appropriately referred to the Superior Court include statute of limitations defenses, allegations of failed notice, res judicata defenses, and "other 'issues' that can be adjudicated in a 'preliminary' fashion." *Gafner v. Down East Cmty.*

*Hosp.*, 1999 ME 130, ¶ 29, 735 A.2d 969 (quoting 24 M.R.S.A. § 2853(5) (Pamph. 1998)).[7] These other issues include "[a] motion based on the assertion that the cause of action upon which the claimant has based her claim before the panel does not exist." *Gafner*, 1999 ME 130, ¶ 30, 735 A.2d 969. The Superior Court, however, must treat such a motion "as a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), asserting a failure to state a claim upon which relief can be granted. . . . If the claimant could not, under any set of facts, make out a cause of action against the respondent, it would be senseless for the panel, the parties, and the court to go through the motions of adjudicating the claim." *Id.*

[¶22] Therefore, the contention that the County Appellants and Dumond have a substantial right to be free from the MHSA panel process is not persuasive. The Legislature declined to provide a procedure for parties seeking exemption from the panel process and instead provided the Superior Court with limited jurisdiction to decide certain matters referred to it. *See* 24 M.R.S. § 2853(5). A desire to avoid the codified procedures of the MHSA does not rise to a substantial right being irreparably lost, especially because the MHSA

---

[7] Title 24 M.R.S.A. § 2853 has since been amended, though the amendments are not relevant to the present case. *See* P.L. 1999, ch. 668, § 102 (effective Aug. 11, 2000) (codified at 24 M.R.S. § 2853 (2025)).

14

provides no procedure for exempting claims from the panel process other than the procedure already used by the parties.[8]

## B.    Immunity Pursuant to the MTCA

[¶23]  We now turn to the County Appellants and Dumond's claim that they are immune from suit under the MTCA, *see* 14 M.R.S. §§ 8103, 8111(1)(C), 8116.  Whether a defendant is immune from suit is typically reviewable in an interlocutory appeal unless the issue has underlying fact questions that "must be decided before the trial court can determine the applicability of immunities as a matter of law."  *Bean v. City of Bang*or, 2022 ME 30, ¶ 4, 275 A.3d 324 (quotation marks omitted).  Here, the Superior Court concluded that the County Appellants and Dumond had not met their burden to show that they were entitled to immunity as a matter of law, and they challenge that conclusion on appeal.

[¶24]  We, however, perceive a threshold issue that must be resolved before contemplating any review of the immunity issue.  There is a pending comprehensive federal action that includes a state law claim, which some parties may be immune from pursuant to the MTCA.  When a plaintiff files a civil rights claim under § 1983 with a pendent state law claim involving, as here, a

---

8  Because we conclude the appeal is interlocutory as to the applicability of the MHSA, we do not address the parties' additional arguments as to the applicability of the MHSA.

nucleus of operative fact in common with the federal claims, there is no jurisdictional impediment to the federal court deciding whether immunity prevents the pursuit of the pendent state claim. *See* 28 U.S.C.A. § 1367 (Westlaw through Pub. L. No. 119-4). Hence, the federal court can and presumably will decide that issue when addressing the pendent state claim. *See, e.g.*, *Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 182-85 (D. Me. 2009); *Martin v. Somerset Cnty.*, 387 F. Supp. 2d 65, 81-83 (D. Me. 2005).[9]

[¶25] The issue, then, is whether it is appropriate to forgo ruling on the immunity issue in deference to ongoing federal litigation. That question depends on whether deference to the federal court serves the interests of justice. *Cf. Fitch v. Whaples*, 220 A.2d 170, 172-73 (Me. 1966); *Cutler Assocs., Inc. v. Merrill Tr. Co.*, 395 A.2d 453, 456-57 (Me. 1978). We believe that it does.[10]

### III. CONCLUSION

[¶26] The issue of whether the defendants are exempt from the MHSA is not immediately appealable. With regard to the claims of entitlement to immunity, we decline to hear that interlocutory appeal in deference to the

---

[9] In our federalist system, just as we may decide claims under § 1983, *e.g.*, *Hicks v. City of Westbrook*, 649 A.2d 328, 329-31 (Me. 1994), the federal court may decide pendent state claims. *See Haywood v. Drown*, 556 U.S. 729, 731, 734 (2009); *Felder v. Casey*, 487 U.S. 131, 139 (1988).

[10] Because we elect to forgo ruling on the immunity issue in deference to the ongoing federal litigation, we decline to reach the arguments presented regarding the MTCA.

federal court.  Hence, we dismiss the appeal with the understanding that the screening process under the MHSA will proceed.  After that screening process is completed, it is our understanding that the federal district court intends to proceed with the litigation pending before it.

The entry is:

Appeal dismissed.

---

Peter T. Marchesi, Esq. (orally), and Michael D. Lichtenstein, Esq., Wheeler & Arey, P.A., Waterville, for appellants Hancock County, Scott Kane, Timothy Richardson, Frank Shepard, Noah Lewey, Travis Young, Russell Wilson, Christopher Stanley, and Jillian Jones

John J. Wall, III, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellant Kayla Dumond

Scott J. Lynch, Esq. (orally), Lynch & Van Dyke, P.A., Lewiston, for appellees Stewart Carney Jr. and the Estate of Monica Jean Johnson

Aaron M. Frey, Attorney General, and Jonathan R. Bolton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amicus curiae Attorney General

Penobscot County Superior Court docket number CIV-2021-74
FOR CLERK REFERENCE ONLY